WILLIAM RANKIN, JR., et al., appellants,

*v.*

ELEANOR COAR, respondent.

1. A widow, who occupied part of a house in which she was entitled to dower, while her son, the sole heir at law, occupied the rest of the house, released her dower therein to the son by a deed duly recorded.—*Held*, that her continued occupation thereafter will not give notice to one who takes a mortgage from the son, of a title in her to the part of the house occupied by her, acquired by an unrecorded deed from the son contemporaneous with her release of dower.

2. Possession, to be effective as notice of title by unrecorded grant, must be open, notorious and unequivocal; when a house is not so constructed as to indicate its use in separate apartments, the fact that a mother occupied a part, while her son (who appeared by the record to be the owner) and his family occupied the same house, is not sufficient to put an intending mortgagee on inquiry as to the mother's right; it may well be assumed that she was a guest or inmate of her son's family.

3. One who acquired a life estate in certain rooms in a house in Jersey City, free from any rent or charge whatever, by a grant not recorded until after the grantor (who appeared by the record to be sole owner) had given a mortgage thereon, paid taxes and water-rents imposed on the premises. Upon foreclosure of the mortgage, the premises were purchased by one who had no notice of such payment, except from the record.—*Held* (1) that the city lien was thereby discharged; (2) that any equitable right to be subrogated to that lien was subordinate to the mortgage, which could not be displaced except by a sale and failure to redeem on notice in the manner prescribed by the charter; and (3) that such subrogated right could not be enforced against a *bona fide* purchaser for value without notice.

On appeal from a decree of the court of chancery, made on the advice of Abram Q. Garretson, an advisory master, as follows:

It is on this 12th day of July, 1889, by Alexander T. McGill, chancellor of the State of New Jersey, ordered, adjudged and decreed, that the complainant, William Rankin, Jr., is the owner, and is entitled to the possession of all the basement and all of the residue of the premises in the bill described, except the rooms on the first floor; and the said defendant, Eleanor Coar, shall sur--

render and deliver to the complainant the said premises so adjudged to him; and the other relief sought in and by said bill is denied.

And the said chancellor does hereby further order, adjudge and decree, that the defendant, Eleanor Coar, under and by virtue of the terms of a certain agreement in writing in relation thereto, between said Eleanor Coar and the defendant, Robert B. Coar, bearing date the 31st day of March, 1876, and recorded in the Hudson county register's office August 12th, 1881, in Book 359 of Deeds for said county, on pages 475 &c., is entitled to the exclusive use and occupation, during the term of her natural life, free from any rent or charge whatever, of the first floor (being the floor immediately above the basement floor) of the dwelling-house in Jersey City, Hudson county (describing it), except the hallway on said floor, which she shall use in common with the other tenants and occupants of said house.

\*    \*    \*    \*    \*    \*    \*    \*    \*

And it is further ordered, adjudged and decreed, that the estate for life of the defendant, Eleanor Coar, to the exclusive use and occupation of the rooms on the first floor of the dwelling-house erected and standing on said premises as aforesaid, is paramount and prior to any right, title or interest therein of the complainants or either of them, and that she is entitled to the use and occupation of the same free from any taxes or water-rents or other municipal or governmental charges, and that all such liens or charges on the whole of said premises are first chargeable on the interest of the complainant therein in exoneration of the said life estate.

And it is further ordered, adjudged and decreed, that said defendant, Eleanor Coar, has a lien and claim upon the land and premises hereinbefore described, being the land and premises mentioned and described in the complainants' bill of complaint, for the following taxes and water-rents paid by her to the municipal authorities of Jersey City, and levied upon said land and premises, \*   \*   \* together with interest on said several payments from the making thereof to the date of this decree, and that the lien and claim therefor of said Eleanor Coar upon

the premises aforesaid, amounting, with interest to this date, to the sum of $1,646.85, is paramount and prior to any right, title or interest of the complainants or either of them.

And it is further ordered, adjudged and decreed, that unless the said complainants or either of them shall, within sixty days after service upon them, or upon their solicitors of record in this cause, of a copy of this decree, pay to the said Eleanor Coar the said sum of $1,646.85, together with interest thereon from the date of this decree, then, in default thereof, the right, title and interest of the said complainants in the said lands and premises, hereinbefore described, be sold to raise and satisfy the said sum of $1,646.85 due said defendant, Eleanor Coar, together with lawful interest thereon, to be computed from the date of this decree, and that a writ of *fieri facias* do issue for that purpose out of this court, directed to the sheriff of the county of Hudson, commanding him to make sale, according to law, of the said premises hereinbefore described, and that out of the money arising he pay to the defendant, Eleanor Coar, or to her solicitors, said debt, interest and costs of execution, in manner aforesaid, and in case more money should be raised by the said sale than shall be sufficient to answer such payment, that said surplus be brought into this court to abide the further order of the court, unless otherwise previously disposed of by the order of this court; and that said sheriff make return, without delay, of his proceedings by virtue of the said writ.

*Mr. Gilbert Collins*, for the appellants.

*Mr. Willard C. Fisk*, for the respondent.

The opinion of the court was delivered by

MAGIE, J.

William Rankin, Jr., and C. A. Rodney Janvier, administrator of Mary R. Janvier (who are the appellants), filed the bill in this cause against Eleanor Coar (who is the respondent), for the strict foreclosure of a mortgage made by Robert B. Coar to

Mary R. Janvier, in her lifetime, on a house and lot in Jersey City.

Respondent, by her answer, claimed a right for life in certain rooms in the house, paramount to the mortgage, and issue was joined on that claim.

Respondent also, by answer in the nature of a cross-bill, claimed, that she had paid taxes and water-rents imposed on the property and was entitled to be reimbursed the amount so paid, with interest, out of the mortgaged premises.

Appellants, by their replication, contested this claim, and further set up in defence thereto, that Rankin, the appellant, was not affected thereby, because he had become a *bona fide* pur-chaser of the property for a valuable consideration and without notice of the claim.

The facts which appeared in the court below were as follows :

John Coar died in 1873 intestate and seized of the premises in question, leaving respondent, his widow, and Robert B. Coar, his only son and heir at law. By deed dated March 31st, 1876, and recorded November 18th, 1876, respondent released to Robert all her dower therein. Thereupon Robert made the mortgage in question to Mary R. Janvier, which was dated December 15th, 1876, and recorded February 5th, 1877.

By an agreement under seal, dated March 31st, 1876, between Robert B. Coar and respondent, it was, among other things, agreed, that she should have " the use and occupation of the rooms now occupied by her in the house known as 228 Grand St., Jersey City, during her natural life, free of any rent or charge whatever." This instrument was not recorded until August 12th, 1881, over five years after the mortgage in question.

The house was then known as No. 228, but has since been and is now known as No. 296 Grand street.

On March 21st, 1887, Janvier's administrator filed a bill to foreclose the mortgage, but omitted to make respondent a party. It is said that the omission occurred because the instrument under which she claimed described the premises by its old number.

Upon a decree in that cause against all the defendants, of whom Robert B. Coar was one, the premises were exposed for sale. Respondent gave public notice, at the sale, of her claim, under the agreement with Robert, to title in the rooms therein mentioned, paramount to that of any of the parties. Rankin, with that notice, bought the premises and took the sheriff's deed, which was dated November 22d, 1887.

Before the death of John Coar, he and respondent occupied certain rooms in the house. Robert and his family occupied other rooms therein. The families lived separately. After John's death, respondent continued to occupy certain rooms, while Robert and his family occupied other rooms. The house was not built in flats or suites of apartments, and would not appear to present, exteriorly, any indication that it was designed to accommodate more than one family.

Upon these facts, the decree declared Rankin entitled to all the premises except two rooms on the first floor occupied by respondent, and denied the relief asked as to those rooms.

It further appeared, that respondent had paid the taxes and water-rents imposed on the property, for the years 1873 to 1887, inclusive. The decree declared respondent entitled to a lien thereon for the sums paid, with interest, paramount to the rights of appellants, and directed a sale of the premises to satisfy the lien.

Appellants attack the decree in both its aspects.

The grounds on which the learned master advised the decree have not been made to appear.

With respect to that part of the decree which established respondent's claim to a part of the house, it is obvious that it must have proceeded on the ground that her occupation thereof gave constructive notice of her title to Mary R. Janvier when she took the mortgage. There is no pretence that actual notice was given. Since the instrument by which respondent claimed was not recorded, the record furnished no notice. For lack of record, that instrument, by virtue of our recording acts, was void as against the mortgage, unless the mortgagee had notice of respondent's title. Rankin, by his purchase at the sheriff's sale,

acquired all the rights the mortgagee had obtained by the mortgage, and may stand upon those rights, notwithstanding the notice of respondent's claim received before his purchase.

The question on this branch of the appeal therefore is, whether respondent's possession, at and before the date of the mortgage, gave constructive notice to Mary R. Janvier or made it her duty to inquire, whereby she might have learned of respondent's right.

This question was, in my judgment, erroneously resolved below. I have reached a different conclusion, on the following grounds :

In the first place, respondent's possession (such as it was) having continued from the death of her husband, was further continued after she had conveyed to Robert, who was also in possession, all her dower right. Her deed was recorded immediately before the Janvier mortgage.

In some of the states the continued possession of premises by one who has conveyed to another, is held to put an intending purchaser or mortgagee on inquiry, and to give notice of any title reserved or granted to the person in possession by unrecorded instruments. A different rule has been announced in this and other states. The conflicting cases are collected in the notes to *section 617 of 2 Pom. Eq. Jur.*

Where a vendor remained in possession, our supreme court held, that one who purchased from the grantee was not bound to inquire whether the vendor had reserved an interest in the premises. The doctrine was put on the ground that the vendor was estopped from impeaching his own deed by proof of an undisclosed arrangement impairing its force. *Van Keuren* v. *Central R. R. Co., 9 Vr. 165.* A similar reason for applying a like rule was given in Michigan. *Bloomer* v. *Henderson, 8 Mich. 395.*

But it is unnecessary to discuss the rule or its reason, for the same doctrine was approved in this court and applied in a case where the vendor, who remained in possession, acquired an interest in the premises, not by a contemporaneous act, but by a subsequent reconveyance, which he did not record. *Bingham* v. *Kirkland, 7 Stew. Eq. 229.*

Unless that case is to be discredited, for which no reason has been given, it is impossible to escape applying the rule therein enforced to the case in hand.   Indeed, this case affords stronger ground for its application, for respondent seeks to establish a title by an act contemporaneous with her own deed, and that deed completed title in one also in possession, and who continued in possession until the mortgage was made.   The latter circumstance alone would justify the inference, that respondent's answer to any inquiry would be to the effect that her occupation was without claim of right, but by sufferance of her grantee, who was also in possession.   Under such circumstances inquiry cannot be said to be a duty.

But without applying the rule above discussed, I think respondent's contention is inadmissible.

Possession, to give notice or to make inquiry a duty, must be open, notorious and unequivocal.   There must be such an occupation of the premises as a man of ordinary prudence, treating for the acquisition of some interest therein, would observe, and, observing, would perceive to be inconsistent with the right of him with whom he was treating, and so be led to inquiry.

The mortgagee in this case may be charged with notice that respondent lived in the house in question.   But it is obvious that the separate possession by her and her son of different parts of the house was not apparent.   There was nothing in the construction of the house to indicate separate possession by its inmates.   It is not shown that houses of the same construction in that locality were customarily used by separate families. Nothing appears which, to a prudent observer, would tend to disclose the real facts.   Those could not have been ascertained in this case even by examining the interior of the house, but only by actually watching the habits and customs of its inmates.

Whether, under such circumstances, any duty of inquiry would be cast on an intending mortgagee, had a stranger to the family of the owner thus occupied part of the house, may be questionable.   But where the possession of the person whom the record discloses to be owner is shared by one connected in close relationship, a different situation is presented.

A rule which would require an intending purchaser or mortgagee to make inquiry into the title or possession of a son or daughter of the owner, who, after attaining full age, has continued to live in the father's house, would, I apprehend, be deemed to be absurd. A different rule could not be applied where a mother occupies a house with her son, who, by the dictates of nature as well as of law, is bound to support and care for her. In such cases the most cautious dealer would think inquiry unnecessary, for he would assume that the child or parent was living in the family rather than maintaining an independent possession.

The true rule is, that when the occupation by one is not exclusive but in connection with another, with respect to whom there exists a relationship sufficient to account for the situation, and the circumstances do not suggest an inconsistent claim, then such a possession will not give notice of a right by unrecorded grant. It will be neither open, notorious nor unequivocal.

Where a widow contributed a part of the purchase-money of a farm, and her brother, who contributed the remainder, took title thereto in his own name without her knowledge, it has been held, that the fact that she lived on the farm with him, did not give notice of her resulting trust to a purchaser from him. *Harris* v. *McIntyre, 118 Ill. 275.*

The possession of a plural wife of a Mormon, along with the possession of the husband and his lawful wife, has been held not to be notice of her right to a share of the property to one who took a mortgage from the husband, who held the record title. *Townsend* v. *Little, 109 U. S. 504.*

Where a husband and wife were in possession of lands to which the wife held title by the record, it was held, that the continuing possession was not notice of an unrecorded deed whereby her title had been conveyed to him. *Atwood* v. *Beames, 47 Mich. 72.*

Upon either of these grounds, I think the decree in the respect thus discussed is erroneous.

The remainder of the decree, which charged on the property the taxes and water-rents paid by respondent, I also think erroneous.

The claim in her behalf is two-fold. It is first insisted, that by Robert's grant to her of a part of the house, free from any charge whatever, he became bound to her to pay these governmental charges, and that, though her payment discharged the lien of the city, she was subrogated to the right to enforce the same lien against Robert's interest in the property.

But the obvious answer to this claim is, that if respondent acquired such a right, it was a mere equity, not enforceable against the property in the hands of a purchaser for value without notice. Rankin was such a purchaser, for he acquired Robert's interest by the sheriff's sale. No notice of the equity now claimed is shown, and the notice of title to part of the house, then given, justified the inference that respondent had no other claim.

It is next insisted, that respondent, being owner of part of the house, was obliged to pay all the taxes and water-rents to save her interest from sale. It is questionable whether she could have obtained an apportionment of these charges under the act of April 21st, 1876. *Rev. p. 712.* Her insistment is, that her compulsory payment of these charges, which are paramount to the lien of mortgages in Jersey City, entitles her to repayment out of the estate which has passed by the sheriff's sale to Rankin.

To this claim, I think it might well be answered, that Rankin acquired not only Robert Coar's title, but also the mortgagee's interest, for value and without notice of the claim, and at a time when the taxes and water-rents appeared on the public records to have been paid and their lien was thus discharged.

Furthermore, it must be remembered that respondent's ownership is now held to be subject to the mortgage which Robert had given. Her payments were therefore partly in her own right and partly in Robert's right.

But payments thus made cannot, in my judgment, acquire a priority to mortgages.

It is true that, by the charter of Jersey City, taxes and water-rents are made liens on real estate paramount to mortgages. *P. L. of 1871 p. 1155 § 151, § 81; Hardenbergh v. Converse, 4 Stew. Eq. 500; Trustees v. Trenton, 3 Stew. Eq. 667; Vreeland v.*

*Jersey City, 10 Stew. Eq. 574.*  But the plain intent of that charter is to make them a primary charge on the owner's interest in the land.  This appears from the mode prescribed for their enforcement, which is by a sale of the land subject to a right of redemption.  A mortgagee has that right, and retains it until the expiration of a. six months' notice from the purchaser.  When the mortgagee redeems it is expressly provided that the money paid, with interest, shall be a lien on the lands, and on a foreclosure shall be directed to be made out of the same.

From these provisions, it is obvious that when taxes or water-rents are paid by owners, the lien of them must be discharged as effectually as if the interest or part of the principal of the mortgage were thus paid.  A like result must follow from a like payment made on behalf of the owner, which appears to be made by him.

Any other construction would produce disastrous results.  When a public sale for taxes takes place, the mortgagee can acquire knowledge of it, and express notice must be given him before his interest can be cut off.  But, if the doctrine argued for in this case be correct, a mortgagee might yearly ascertain that such charges had been paid and be thus induced to let his mortgage remain, and yet afterward some friend of the owner who had paid his taxes for him might be accorded priority over the mortgage for all such payments.  I think such a construction inadmissible.  The true construction of such provisions will leave the mortgage interest in land unaffected and paramount, unless a sale for taxes has been made and, upon the notice prescribed, the mortgagee has failed to redeem.

Respondent's counsel relies upon *Schatt* v. *Grosch, 4 Stew. Eq. 199,* and *Fiacre* v. *Chapman, 5 Stew. Eq. 463,* in which cases the court of chancery has held, that payment of taxes by second mortgagees may be established as a prior lien to the first mortgages.  But if those cases can be deemed to have been correctly decided, I think it must be on the ground that such charters as that in question give a right of redemption to mortgagees generally, a circumstance which may possibly distinguish those cases from that now before us.

Had respondent been made a party to the bill to foreclose and sell the mortgaged premises, her equitable lien on Robert's interest might perhaps have been recognized and enforced in subordination to the Janvier mortgage. But Robert's interest has passed to a *bona fide* purchaser for value without notice, and the relief now demanded is that of a mere foreclosure of her rights. Those rights which are subordinate to the Janvier mortgage may be protected by redemption.

For these reasons, I think the whole decree should be reversed, with costs. The record should be remitted to the court of chancery, with direction for a decree giving appellants the relief prayed for in their bill, according to the practice of that court.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Dixon, Garrison, Magie, Scudder, Van Syckel, Brown, Clement, Cole, Smith, Whitaker—11.