ADAMS-BOOTH CO. v. REID et al.

(Circuit Court, D. Nevada.  December 2, 1901.)

No. 700.

1. MORTGAGE—VALIDITY AS AGAINST THIRD PERSONS—NOTICE OF EQUITIES.

To sustain a parol agreement made by a father to convey an interest in real estate to his sons in consideration of services to be rendered by them, and render the same enforceable as against a subsequent mortgagee of the property, the proof of such agreement, and its fairness and good faith, must be clear, positive, and convincing; and it must be clearly shown that the mortgagee had knowledge or notice thereof.

2. SAME—CONSTRUCTIVE NOTICE—POSSESSION.

The fact that at the time of the execution of a mortgage the two sons of the mortgagor, one of whom was 22 and the other 20 years of age, resided with their father and mother on the mortgaged property, and were assisting their father in conducting his business thereon, does not constitute such possession of the property by the sons as to charge the mortgagee with constructive notice of their right or claim to an interest therein under a parol agreement with their father.

3. SAME—IMPEACHMENT FOR FRAUD.

Plaintiff, a corporation engaged in the wholesale mercantile business, had sold goods to a customer, for which he was indebted in the sum of $3,500.  An agent of plaintiff requested a mortgage on real estate from the customer, and, at the latter's solicitation, took one for $5,000, promising to furnish him with further goods, on request, to the amount of $1,500, to enable him to keep up his stock and continue his business through the season, and until he could collect from his customers, who were largely farmers.  Shortly afterward, and before any request to furnish the goods had been made, the customer turned over his stock to another creditor, and consented to the appointment of a receiver therefor; and plaintiff then refused to furnish the goods, but, on foreclosure of the mortgage, credited the sum of $1,500 thereon.  Held, that such facts did not establish fraud or deception on the part of plaintiff, to the injury of the mortgagor, which would invalidate its mortgage, but that the action of the mortgagor justified its refusal to make further advances.

4. SAME—SUIT TO FORECLOSE—WAIVER OF DEFENSE.

The failure of a mortgagor, served with process in a suit to foreclose the mortgage, to appear and contest the same, is a waiver of a defense going to the validity of the mortgage; and neither he, nor others claiming through him, and having no greater rights, can make such defense in a subsequent action of ejectment by the mortgagee to recover the property, based upon title acquired in the foreclosure suit.

In Ejectment.

This is an action to recover possession of certain property, hereinafter described.  From the evidence offered on behalf of plaintiff, it appears, among other things, that on June 15, 1895, P. K. Reid and his wife, two of the defendants in this action, made, executed, and delivered to the plaintiff herein a mortgage to secure the payment of a note for $5,000 upon all of lots 6, 7, 8, 9, and 14; also N. ½ of lot 10 in block No. 22 in Lovelock.  Attached to said mortgage was the following memorandum:

"This memorandum made this 15th day of June, 1895, between P. K. Reid, of Lovelock, Nev., the party of the first part, and the Adams-Booth Co., of Sacramento, Cal., party of the second part, is evidence that, for a valuable consideration, I have this day sold and transferred to the party of the second part all stone, cut and uncut, now on my ground at Lovelock; being on lots 8, 9, and 10 in block 22, and being for the purpose of building one new building. This stone to be considered as part of the realty, and be included as a part of one certain mortgage of even date herewith, and mentioned therein as 'other building material.' P. K. Reid."

On February 21, 1896, suit was brought in this court to foreclose said mortgage. The defendants P. K. Reid and Annie P. Reid were duly served, and on April 4, 1896, an appearance was regularly entered by an attorney on their behalf. On May 15, 1896, the time for answering having expired, and no plea having been made, an order pro confesso against the defendants was regularly entered, and notice given to the defendants' attorney that plaintiff would apply for a decree on August 3, 1896. The decree was regularly entered upon the hearing for $3,603.39, and for interest, counsel fees, and costs. Thereafter, upon proceedings regularly had, the property was sold. Plaintiff became the purchaser, and on October 1, 1897, received from the officer making the sale a deed for said property. On June 7, 1897, the following memorandum was executed, delivered, and recorded:

"This memorandum made by P. K. Reid, of Lovelock, Nevada, and Adams-Booth Co., of Sacramento, California, is evidence that Adams-Booth Co. are the owners of, and on August 5th, 1897, will be entitled to the possession of, the following described property, situated in the county of Humboldt, state of Nevada. to wit: Lots 6, 7, 8, 9, 14, and the north half of lot 10, and all buildings and building material thereon, all in block number 22 of the town of Lovelock, Nevada, county of Humboldt aforesaid, and that P. K. Reid is desirous of occupying the same at the will of Adams-Booth Co. at a monthly rental at the rate of one dollar per month, from and after the 5th day of August, 1897; that the said P. K. Reid will vacate said premises, and all of it, at any time after the 5th day of August, 1897, upon fifteen days' notice to the effect that possession thereof is required by Adams-Booth Co., its successors or assigns. It shall be sufficient notice to said Reid to deliver such notice to the person in occupancy of the premises, whether said Reid be present or not. Witness our hands and seals the date and year first above written. Patrick Reid.
"Adams-Booth Co.,
"By F. B. Adams, Vice President."

On October 5, 1899, the plaintiff herein commenced an action in the state court against P. K. Reid, wherein, after alleging its ownership of the property, the execution of the lease or memorandum above set forth, it averred "that on the 10th day of April, 1899, and again on the 31st day of August, 1899, plaintiff notified defendants that the Adams-Booth Company required the possession of the premises above described, and thereupon demanded that the defendant surrender said premises to plaintiff, but that the defendant refused to surrender the possession thereof, and ever since has and still does wrongfully and unlawfully withhold the premises from plaintiff."

After issue joined, the action was tried, and judgment entered in favor of plaintiff for the recovery of the possession of said property, with damages, etc., for the detention thereof. A writ of assistance was issued, and on May 31, 1900, the sheriff of Humboldt county made his return as follows: "I, C. W. McDeid, sheriff of the county of Humboldt, do hereby certify that under and by virtue of the within writ of ejectment, by me received on the 28th day of May, 1900, I served the same on the 29th day of May, 1900, by placing F. E. Baker, agent for the within-named Adams-Booth Co., in quiet and peaceable possession of the lands and premises therein described." Thereafter the defendants Paul Reid and Emmett Reid wrongfully entered upon said premises and took possession thereof by force. In the present action P. K. Reid and Annie P. Reid made default. The defendants Paul Reid and Emmett Reid appeared, and for a defense allege, in substance, that they are children of

the said P. K. Reid and Annie P. Reid; that about February 15, 1895, Emmett Reid, being of the age of 22 years, and Paul Reid, entering on his 21st year, had concluded to leave the home of their parents and seek employment to enable them to earn a livelihood, and so notified their father and mother, when then and there their said father and mother entered into an agreement with them that, if they would remain at home and work for their father and mother for the period of three years, they should receive an undivided two-thirds interest in and to all the real property of which their father and mother were possessed, which consisted of the lots of land mentioned and described in the complaint in this action; that Paul Reid and Emmett Reid accepted said offer with the express understanding that they were to receive an undivided two-thirds interest in and to the said property; that they thereupon abandoned the intention of leaving their home, and entered the employment of their father and mother; that for three years after entering into the agreement they worked for their said father and mother in and around the store, digging out and blasting rock and quarrying stone, cutting and squaring the same, making it suitable for building purposes, hauling the same, and assisted in putting up stone buildings on the property; and that at all times and under all circumstances they obeyed their father's orders, and did whatever he ordered or requested them to do for the entire period of three years from the 15th day of February, 1895, until and including the 15th day of February, 1898; and they aver that although they, and each of them, have performed and fulfilled their parts of the contract and agreement hereinbefore mentioned, the said defendants P. K. Reid and Annie P. Reid have failed to perform their part of said contract and agreement, and these defendants have been informed and believe, and therefore allege the facts to be, that the reason of the failure of P. K. and Annie P. Reid to carry out their part of said contract and agreement was and is through misrepresentation, fraud, and deceit of this plaintiff, practiced, perpetrated, and committed by it and its officers on the said P. K. and Annie P. Reid and these defendants Paul and Emmett Reid, and said misrepresentations, fraud, and deceit consist of the following facts: That on and prior to the 15th day of June, 1895, P. K. Reid was engaged in the mercantile business at the town of Lovelock, buying and selling large quantities of goods, and purchasing goods of the plaintiff; that on or about the 15th day of June, 1895, "the said P. K. Reid was indebted to the plaintiff in the sum of $3,500, and no more, and, the said P. K. Reid wishing to keep up his said stock of goods, it was agreed by and between the said P. K. Reid and this plaintiff that the said P. K. Reid would give to the said plaintiff his certain promissory note, dated the 15th day of June, 1895, for the sum of $5,000; said note to be secured by a mortgage of even date thereof, signed by the said Patrick K. Reid and Annie P. Reid, his wife, on the property herein described; and, in consideration of the executing and delivery of the said note and mortgage as herein set forth, the said plaintiff promised and agreed that it would furnish, sell, and deliver to the said P. K. Reid, at such times and in such quantities as the said P. K. Reid might order and require, goods and merchandise to the value of $1,500, in pursuance of said agreement, and no other; and with the express understanding that the said plaintiff was to furnish him with the goods, wares, and merchandise to the value of $1,500, the said Patrick K. Reid and Annie P. Reid, his wife, made, executed, and delivered to this plaintiff their certain promissory note in the sum of $5,000, and, to secure the payment thereof, made, executed, and delivered to the plaintiff a mortgage of the property herein described; it being all the property of which the said P. K. Reid and Annie P. Reid had any interest in, or was standing in their names; and immediately after the receipt of the said note and mortgage by the plaintiff, and although often requested by the said P. K. Reid to furnish him goods, wares, and merchandise to the value of $1,500, which was then justly due and owing from the said plaintiff to the said P. K. Reid, the plaintiff failed and refused, and still fails and refuses, to furnish said goods or refund the said amount of money, and by reason of the said plaintiff failing and refusing to furnish the said P. K. Reid with the said amount of goods, wares, and merchandise, as agreed so to be furnished by the said plaintiff, the said

P. K. Reid was forced to suspend business, and unable to comply with his part of his agreement with these defendants, Paul and Emmett Reid." They further aver that at the time the mortgage was executed by defendants P. K. Reid and Annie P. Reid, his wife, the plaintiff was fully informed as to the agreement theretofore made and entered into by and between the said P. K. Reid and Annie P. Reid, his wife, and these defendants, Paul and Emmett Reid, and the said plaintiff, well knew that the said Paul and Emmett Reid were then in possession of the said lands and premises mentioned and described in the complaint, "claiming the right so to be, in company with their said father and mother, under the terms of the agreement hereinbefore mentioned, claiming an undivided two-thirds interest in and to said property and every part and parcel thereof." They further aver that the false, fraudulent, and deceitful representations made by plaintiff to the said P. K. Reid and his wife, in order to induce them to make, execute, and deliver the note and mortgage hereinbefore referred to for the sum of $1,500 more than was justly due to the said plaintiff from P. K. Reid at the date of the execution of the same, and only upon and after the plaintiff had solemnly promised that it would furnish the said P. K. Reid with goods, wares, and merchandise to the value of $1,500, and its failure to keep its said promise and comply with its part of the agreement, and its failure to furnish the goods, wares, and merchandise as it had agreed to do, caused the failure of the said P. K. Reid, and prevented him from being able to carry out his part of the agreement with said defendants Paul and Emmett Reid, and was therefore a fraud perpetrated upon these defendants, "because, if the said plaintiff had complied with its part of the contract and agreement made and entered into by and between this plaintiff and the said P. K. Reid, * * * he, the said P. K. Reid, would have been able to furnish his customers * * * with their supplies during the irrigating and cropping season, and as soon as the said crops were harvested by the said farmers the said P. K. Reid would have been able to collect the amounts due him, and pay his indebtedness, including the amount due to this plaintiff; but by the deception, fraud, and misrepresentations practiced, committed, and made by this plaintiff in securing the said note and mortgage, and its failure to comply with its part of the contract and agreement in furnishing the goods, wares, and merchandise to the value of $1,500 to the said P. K. Reid, ruined his credit, and forced him to retire from business, and deprived him of his property and opportunity and business wherewith to secure money to pay his indebtedness, and to carry out his part of the agreement with these defendants," whereby these defendants, Paul and Emmett Reid, have been damaged by the acts of this plaintiff in the sum of $3,600. They further aver that they were in possession of the lots of land and premises, with the improvements thereon, from the 15th day of February, 1895, until and including the 15th day of February, 1898, "in connection with their father and mother, working on and improving said property"; that since February 15, 1898, these defendants have been, and now are, the owners, in possession, and entitled to the possession, of the undivided two-thirds interest in the property sued for, claiming the same against the plaintiff and the entire world.

Upon the trial it was admitted that the alleged agreement between the father and his sons, as set out in the answer, was not in writing. Objection was then made to the admission of any parol evidence to establish the agreement, upon the ground that under section 2696, Cutting's St. Nev., every contract for a longer period than for one year for the sale of land, or any interest in land, is void, unless some note or memorandum thereof expressing the consideration be in writing, and be subscribed by the party by whom the sale or lease is to be made, which is admitted by counsel not to have been done; that the contract was entirely in parol; and, further, that the evidence is inadmissible under section 2700 of the same statute, providing that every agreement shall be void if it is not to be performed within one year, unless some note or memorandum thereof shall be in writing. The court informed defendants' counsel that the objection would be sustained unless they were able to produce authorities in support of their contention. After some discussion pro and con, the court announced that it would admit the testimony subject to the objection.

L. T. Hatfield and Torreyson & Summerfield, for plaintiff.
W. S. Bonnifield and M. A. Murphy, for defendants.

HAWLEY, District Judge (orally). I am of opinion that this court would have been justified in refusing to allow defendants to offer any parol testimony as to the alleged agreement they made with the father. The agreement was not in writing, and by its terms was not to be performed within one year from the making thereof; and the evidence given by the witnesses came within the provision of the statute of frauds, and should have been excluded. Warner v. Railway Co., 164 U. S. 418, 431, 17 Sup. Ct. 147, 41 L. Ed. 495. But it is unnecessary to rest this opinion solely upon that ground. Admitting, for the sake of the argument, that there was such a full or part performance of the agreement as would take the case out of the statute, so far as the father was concerned, and that, in a suit by the sons against the father for a specific performance of the agreement, they would, upon similar testimony to that given in this case, be entitled to recover, because the father admitted the agreement, and full compliance therewith, substantially as alleged in the answer of his sons; but in my opinion, the entire testimony, when carefully weighed and duly considered, in the light of all the facts and surrounding conditions and circumstances, is wholly insufficient to constitute a defense against the rights of the plaintiff in this action. The defendants contend that they are entitled to maintain their verbal agreement made with the father, against plaintiff, on the ground that it had actual notice thereof at the time it accepted the mortgage from their father and mother. Both of the sons were positive that such notice was given, and detailed with great minuteness all that was said and done on that occasion. All the members of the Reid family were present. Mr. Walsh, acting as the agent of the plaintiff, was at the store for the purpose of securing the indebtedness of P. K. Reid then due and owing to plaintiff, in the sum of $3,500. He requested the father and mother to execute a mortgage upon the real estate to secure this indebtedness, and the sons testified that they notified Mr. Walsh that they each owned an undivided one-third interest in the real estate, under the verbal agreement made with the father, and that they then and there objected to the giving of the mortgage, and that Walsh said that the execution of the mortgage was a "mere matter of form." The father testified that he informed Walsh that he only owned one-third of the property, but his testimony must be taken and considered in the light of other testimony given by him. When he was asked why he did not make that defense at the time of the foreclosure suit, he replied that he was never served with any papers, and did not know anything about that suit, and had no opportunity to defend it; and this in the face of the fact that the records in that case, on file in this court, show that both he and his wife were regularly served with process. The testimony shows that the father and mother objected to signing the mortgage unless plaintiff would agree to make a further advance of $1,500, so that they could continue business. This objection was overcome by the promise of Walsh that this would be done, and the note was then

given for $5,000, so as to include this advance in addition to the amount of the $3,500 then due; and the mortgage was given to secure this note, and the husband and wife signed the mortgage without further objection. It would serve no useful purpose to detail at any length the testimony of the Reids as to the notice. It is enough to say that it is neither satisfactory nor convincing, and in many respects is unnatural and unreasonable. Is it reasonable to believe that the father, if he had made the agreement with his sons, and given the notice thereof to plaintiff, as alleged in the answer and testified to by the members of the family, would have executed the mortgage upon the entire property? Is it reasonable to believe that, if in fact he only owned one-third of the property, he would, on the same day of the execution of the mortgage, voluntarily have executed the memorandum attached to the mortgage, that "all stone, cut and uncut, now on my ground at Lovelock, * * * to be considered as part of the realty, and be included as a part" of the mortgage? Is it reasonable to believe that, having been regularly served with process in the suit to foreclose the mortgage, the father would have allowed the suit to go by default? Is it reasonable to believe that the father on June 7, 1897, would have executed the memorandum of lease hereinbefore set forth, declaring, among other things, that the Adams-Booth Company "are the owners of, and on August 5, 1897, will be entitled to the possession" of, the property described therein?

With reference to the notice, Mr. Walsh, called in rebuttal, testified: That he had no conversation with either of the sons, and could not recollect whether they were present in the room. That P. K. Reid and his wife objected to the signing of the mortgage unless plaintiff would make a further advance of $1,500; that unless that was done they could not get further goods, or continue their business. "I told them that I felt certain, from the kindly feeling existing by Mr. Adams, that he would carry them for a further amount of goods, and to make this mortgage for five thousand dollars to cover further advances. Then they consented, and signed the mortgage." Upon his cross-examination by defendants' counsel, the following questions were asked, and answers given:

"Q. Are you positive, Mr. Walsh, that, at the time that you drew the mortgage in Lovelock, that you did not see Paul Reid or Emmett,—those two men here? A. I am not positive; no, sir. Q. Then they might have been there, and you not know it, or not remember it, rather? A. They may, perhaps. Q. Are you positive that they did not protest as against the giving of that mortgage at that time? A. To the best of my knowledge on that, I am positive. Q. You are positive? A. To the best of my knowledge, I am positive. Q. You would not say 'No,' would you, and stand to it? A. I would say it to the best of my honest belief, sir. If it was said, I have no recollection of it whatever. If it had been, I certainly would have taken some steps to have included them, to protect the firm against anything afterward."

The evidence, in its entirety, is insufficient to sustain defendants' contention. The authorities cited by them do not support their position. Most of them are cases for specific performance, and have no application to the facts of this case. Others are to the effect that

purchasers of the property, having absolute and unquestioned knowledge of the execution and full performance of the oral agreement, would be bound thereby. In all these cases the facts were undisputed, and were clear, positive, and direct. In Gardenhire v. White (Tenn. Ch. App.) 59 S. W. 661, a conveyance from a father to his son was upheld because made for a sufficient consideration before any rights of the father's judgment creditor had attached to the land. Here the father never executed any deed, and in fact the sons could not demand a deed from him until after the expiration of three years from the time of the agreement. The mortgage was executed by the father within three or four months after the agreement was talked over by the family. It is undoubtedly true that verbal agreements between father and sons of the same general character as testified to in this case have been upheld and sustained against the charge of fraud where the verbal agreement had been fully executed, and a conveyance delivered in pursuance thereof. The crucial test in such cases is "whether the transaction was honest and bona fide." Van Sickle v. Wells, Fargo & Co. (C. C.) 105 Fed. 16, 24, 25. The books are full of cases upon this subject, and the general principle has been frequently announced that the testimony in support of such agreements must be carefully scrutinized by the courts, and the proofs in regard thereto must be satisfactory, clear, positive, and convincing, in order to justify the court in upholding them. "Wherever this confidential relation is shown to exist, the parties are held to a fuller and stricter proof of the consideration, and of the fairness of the transaction." Bump, Fraud. Conv. 98, and authorities there cited.

It is next claimed by the defendants that the entering into the possession of the real property by the sons before the mortgage was executed was a part performance of their contract with their father, and of itself imparted notice to the plaintiff that they claimed an interest in the property. This contention is made without any foundation. There was no testimony whatever that the defendants entered into possession of the property under such claim. Their own testimony shows that they lived with their father and mother upon the premises in the same relation after the agreement as before. They exercised no dominion or control over the property. Their father was in possession, and his sons worked for him, and did whatever, they were requested to do; assisting him in the sale of goods, tending bar, hauling rock upon the premises, and dressing the same for building purposes, etc. The sons had no such control over the property as to change the possession of it, or the nature of the father's occupancy thereof, so as to affect with constructive notice persons who had no actual notice.

In Townsend v. Little, 109 U. S. 504, 511, 3 Sup. Ct. 357, 27 L. Ed. 1012, the court said:

"Constructive notice is defined to be, in its nature, no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted. Plumb v. Fluitt, 2 Anstr. 432; Kennedy v. Green, 3 Mylne & K. 699. Where possession is relied on as giving constructive notice, it must be open and unambiguous, and not liable to be misunderstood or misconstrued. Ely v. Wilcox, 20 Wis. 523, 91 Am. Dec. 426; Patten v. Moore, 32 N. H. 382; Billington's Lessee v. Welsh, 5 Bin. 129, 6 Am. Dec.

406. It must be sufficiently distinct and unequivocal, so as to put the purchaser on his guard. Butler v. Stevens, 26 Me. 484; Wright v. Wood, 23 Pa. 120; Bogue v. Williams, 48 Ill. 371. As said by Strong, J., in Meehan v. Williams, 48 Pa. 238, what makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell. See, also, Holmes v. Stout, 4 N. J. Eq. 492; McMechan v. Griffing, 3 Pick. 149, 15 Am. Dec. 198; Hanrick v. Thompson, 9 Ala. 409."

Tested by these rules, it is manifest from all the testimony given in this case that the sons had no such possession of the property as to put plaintiff upon inquiry, or charge it with any constructive notice of their claims.

Finally it is claimed that the plaintiff, by drawing a note for $5,000, and accepting a mortgage to secure its payment, when only $3,500 was due, and promising to make an advance to P. K. Reid and wife of $1,500 when requested so to do, and its refusal to make the advance upon request, constitutes a fraud upon the father and mother, which resulted in an injury to the sons, which prevents the plaintiff from any recovery herein. The testimony on this point was substantially to the effect that P. K. Reid did not expect the plaintiff to push him in the matter of the indebtedness, and, if he gave the mortgage, it might affect his credit, and have a tendency to injure his business and leave him without sufficient means to carry on his store, and that he feared the plaintiff would not furnish him any more goods if he gave the mortgage. Mr. Walsh then wanted to know how much he would need to carry on the store until fall, when he expected to be able to make collection from the farmers who were indebted to him. The amount was figured up, and stated to be about $1,500; and then Mr. Walsh promised that such an advance would be made upon request, and the $1,500 was added to the amount of the indebtedness due to plaintiff, and the note and mortgage was given for $5,000. This was satisfactory to Mr. Reid and wife, and they then executed the mortgage. After the execution of the mortgage, P. K. Reid turned over to the bank at Winnemucca, to whom he was indebted in the sum of about $10,000, all of his goods, and consented to a receiver taking charge thereof, before any demand was made on plaintiff to furnish the $1,500 worth of goods as promised. At the time the mortgage was foreclosed, credit was given for said $1,500 by plaintiff, and the decree was entered only for the sum admitted to be due. The reason given by the plaintiff in declining to send any more goods is contained in a letter as follows:

"P. K. Reid, Esq., Lovelock: * * * According to your letter of the 17th, you evidently understood that we were to render assistance to the bank. Our idea always was to assist you. When we received the security, it was to cover advances already made you, and to also cover such further advances as we might make to you. The bank people were to carry your a/c as heretofore, with such securities as they then had. Since that time, however, the bank has taken actual possession; and any goods we might furnish would merely strengthen the bank's position, and be of no assistance to you, and certainly not to us."

From all the facts, it clearly appears that there was no fraud committed, no deception or misrepresentation made on the part of plaintiff, to the injury of the defendants. The objections urged by P. K. Reid and his wife induced the plaintiff to make the promise. The

112 F.—8

conversation between the parties with reference to the promise of plaintiff to make a further advance necessarily implied that P. K. Reid, as well as the plaintiff, should "act in good faith." It was the act of the defendant P. K. Reid in placing all the goods in the store in the possession of the receiver for the bank that furnished the cause for the nonfulfillment of the promise. Even if it could be held that there was any damage to P. K. Reid, he has certainly waived it. His time to speak was afforded him in the foreclosure suit. By his silence and nonappearance in that suit and in this he has waived whatever right or remedy, if any he ever had, to claim that the plaintiff had been guilty of any conduct resulting in any damage to him; and, from my conclusion upon the facts of this case, it is apparent that the sons have no cause of action against the plantiff upon this ground. Graham v. Railroad Co., 102 U. S. 148, 154, 26 L. Ed. 106.

Let a decree as prayed for be entered in favor of plaintiff, with costs.