VICTOR OLSON v. GEORGE W. OLSON AND ANOTHER.
A. A. FRETTEM, APPELLANT.[1]

No. 31,724.

July 1, 1938.

[1]Reported in 280 N. W. 640, 281 N. W. 367.

200

*Andrew Finstuen* and *A. J. Rockne,* for appellant.
*Albert Mohn* and *Clifford F. Erickson,* for respondent.

Stone, Justice.

Action to determine the rights of plaintiff under a contract for support which was a lien on the involved 80-acre farm; to declare said lien prior to that of a mortgage; and to sell the land to satisfy plaintiff's lien. The court below found the facts for plaintiff and ordered judgment accordingly. Defendant Frettem appeals from the order denying his motion in the alternative. Defendant George W. Olson having defaulted, we refer to Frettem as though he were the only defendant.

Plaintiff and George W. Olson are father and son. Prior to March 18, 1930, the former owned an undivided one-fourth interest in the farm. He had lived on it continuously as his homestead since 1904. March 18, 1930, George W. Olson received a conveyance of his father's one-fourth and the three-fourths interests in the farm held by others, thereby acquiring the whole fee. Of even date with the conveyance, father and son executed the contract for support, and the son received a bill of sale of all his father's personal property. In the contract the son agreed, in consideration of his father's deed, to pay the latter $1,400; to provide a home for him on the premises for the balance of his lifetime; and to furnish him board and lodging. The contract was made a mortgage on an un-

divided one-fourth interest. It was not recorded until August, 1934. March 29, 1930, the son executed a mortgage on the whole tract to defendant to secure a loan of $4,500. It was promptly recorded April 2. Defendant had no knowledge of the father-son contract and did not learn of it until 1934. The mortgage has been foreclosed, defendant purchasing at the sale.

Which is the superior lien—plaintiff's contract or defendant's mortgage? First of record is ordinarily first of right. 2 Mason Minn. St. 1927, § 8226. But plaintiff contends, and the court below found, that he had such possession at the time of the execution of defendant's mortgage as to give constructive notice of his rights. Passing that point, we go to another which is decisive.

Conclusive as matter of law is defendant's point that plaintiff is estopped from denying priority to appellant's mortgage. In Esty v. Cummings, 80 Minn. 516, 83 N. W. 420, the owner of encumbered property conveyed to a third person to enable the latter to borrow money wherewith to redeem a foreclosure. Simultaneously, an unrecorded instrument of defeasance was executed providing for a reconveyance to the fee owner, and it was made a lien. The loan was made, and the mortgage securing it was duly recorded. It was foreclosed without redemption. The mortgagee brought ejectment against the former owner's wife in possession. She denied authority for the mortgage to the plaintiff, standing on the unrecorded instrument of defeasance to defeat him. We held that she was estopped from denying the validity of plaintiff's mortgage [80 Minn. 518]. "She clothed Hall with title to the property, empowered him to make a loan thereon for her benefit, and cannot now be heard to dispute that which her conduct induced, and was intended to bring about." The learned trial court sought to distinguish that case from this on the ground, first, that notice of rights through possession was not involved; and, second, the contract for support in the case at bar covers just one-fourth interest and does not affect the land purchased by George Olson with the proceeds of defendant's mortgage. We do not agree. Such an estoppel overrides the rights of the estopped under an unrecorded instrument even though his possession was the harbinger of constructive notice. McEwen v.

Keary, 178 Mich. 6, 144 N. W. 524, L. R. A. 1916B, 1063. Plaintiff's deed was one of quitclaim. So the estoppel is not one by warranty but rather by his act of conveyance with its intended and speedily effected result in defendant's mortgage. Where, as here, plaintiff conveyed to his son knowing that the son thereafter was to encumber the property in order to pay for it, and the subsequent mortgage (to defendant) covered the whole property, the plaintiff must be taken to have intended that result. He cannot defeat the intended mortgagee's rights by clothing his son with record title and then encumbering the property by a secret, unrecorded agreement.

Query: Is not the result further buttressed by the fact that defendant's was a purchase-money mortgage? "When a third party furnishes a part of the purchase price and takes a mortgage therefor from the vendee, the mortgage may be given effect as a purchase-money mortgage." 4 Dunnell, Minn. Dig. (2 ed.) p. 669, § 6208. "It is unnecessary that the deed and the mortgage should be executed at the same moment, or even on the same day, provided the execution of the two instruments constitutes part of one continuous transaction and was so intended." 4 Dunnell, Minn. Dig. (2 ed.) p. 669, § 6209, and cases cited. If plaintiff's contract for support may also be taken as a purchase-money mortgage, it too would have attached at the same time as defendant's. Having equality of rights thus far, would not plaintiff have had to record to save them? Would or would not defendant's diligence in recording first have saved his and overcome plaintiff's otherwise equal standing?

The order under review must be reversed and the case remanded for decision agreeably hereto and judgment for defendant.

So ordered.

UPON APPLICATION FOR REARGUMENT.

On September 30, 1938, the following opinion was filed:

STONE, JUSTICE.

Plaintiff's petition for rehearing is denied, but only after reconsideration as searching as any which could have followed reargument. For plaintiff, the petition itself is a reargument.

We adhere to the result first announced, but for reasons hereinafter appearing we now base decision upon a different ground than that on which we proceeded originally. Hence our former opinion is withdrawn except for its statement of facts and issue. These additional facts are important. Plaintiff is a widower. Long had the farm been operated by him and his son George jointly. There is much evidence that the son had carried the main burden of the farming—managing the varied operations from seedtime to harvest, doing much of the work himself and in "changing work" with neighbors. He was not there constantly, but it was as much his home as his father's. A finding that he was not in joint occupancy with his father, the plaintiff, could not be sustained on the record.

Through no fault of counsel for plaintiff we did not even cite in the original opinion Groff v. State Bank, 50 Minn. 234, 52 N. W. 651, 36 A. S. R. 640. The gist of that decision is thus stated by the syllabus: "Possession of the granted premises by the grantor after delivery of his deed is as effectual, as notice of the interest of the occupant, as possession by a stranger to the record title." The possession of the grantor there determinative began June 18, 1887, contemporaneously with the possessor's deed to another and continued until long after May 10, 1888, when the defendant obtained the judgment against the lien of which the grantor's possession was held effectual, as notice of his reserved but unrecorded title. On the face of things the Groff case runs counter to our original opinion. It is for that reason, among others, that our former opinion is withdrawn and this one substituted.

This opinion should not be construed as deciding, even by implication, whether there was estoppel against plaintiff by his deed and attendant conduct. Cf. Palmer v. Bates, 22 Minn. 532. Our former opinion somewhat misconstrued the evidence of the father's knowledge of and participation in the son's conduct. Our reconsideration of the record has convinced us that it is not susceptible of quite so strong a factual application against plaintiff as we at first adopted. But it leaves no room for any other conclusion than that the father's possession was not such as to constitute notice of his rights under the unrecorded contract for support.

Neither must we now consider whether the Groff case leaves room for qualification by the rule of some jurisdictions that continued possession by a grantor "for a not unreasonable time" after his conveyance (here it was only 11 days before appellant took his mortgage) is not constructive notice of his rights, but is presumed a mere holding over at the will of his grantee. See Tutt v. Smith, 201 Iowa, 107, 113, 204 N. W. 294, 48 A. L. R. 394; Turman v. Bell, 54 Ark. 273, 15 S. W. 886, 26 A. S. R. 35; Brinkman v. Jones, 44 Wis. 498, disapproving New v. Wheaton, 24 Minn. 406.

In the Groff case there was no occasion for qualitative analysis of the possession necessary to put subsequent purchasers on notice. Because we consider that, in any view of the evidence, plaintiff's possession was not of character adequate to put appellant Frettem, as a subsequent purchaser from plaintiff's son and grantee, on notice concerning plaintiff's rights, we see no possibility of any result other than that first reached, *i. e.*, reversal with direction that judgment for appellant follow.

The precise question does not seem to have been passed upon by this court, but there is abundance of authority holding generally, with here and there a qualification not now important, that possession must be exclusive. 3 Washburn, Real Property (5 ed.) p. 337; Subject note, 13 L.R.A.(N.S.) 49, 78. That doctrine does not mean, we think, that the occupancy must be confined to one person. Were it otherwise, two or more tenants in common in joint occupancy would be deprived of all benefit of notice from their occupancy. The adjective "exclusive," in that context, probably must be considered as applying to the legal character of the occupancy rather than to the number of persons, if more than one, who enjoy it. See 2 Tiffany, Real Property (2 ed.) 2230.

In its factual aspect and as it would appear to either lawyer or layman of ordinary prudence, plaintiff's possession during the determinative period, from March 18 to March 29, 1930, was nothing more than that of a father, living with his son and recent grantee, in a home which had long been theirs jointly, and which as far as could then be foreseen by a stranger was so to remain, with all its former attributes, save the change in title effected by the father's

deed to the son and unaffected by the long to be kept secret defeasance, implicit in the contract for support.

In that aspect, plaintiff's possession did not measure up to the law's requirements for constructive notice. These requirements, pertinent to the present inquiry, are thus stated in Townsend v. Little, 109 U. S. 504, 511, 3 S. Ct. 357, 361, 27 L. ed. 1012, 1014:

"Where possession is relied on as giving constructive notice it must be open and unambiguous, and not liable to be misunderstood or misconstrued. * * * It must be sufficiently distinct and unequivocal so as to put the purchaser on his guard. * * * As said by Strong, J., in Meehan v. Williams, 48 Penn. State 238, what makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell."

In the Townsend case (from Utah Territory) it was held that a polygamous wife, occupying premises with her "so-called husband," the record owner, did not have such possession as to give constructive notice of her rights under a secret agreement with the owner.

In short, any sum of facts, in order to be notice as against a right otherwise unimpeachable under a recording act, must be such as, in the very nature of their aspect and environment, are provocative of inquiry. That feature absent, there is no notice. Hence possession which is consistent with the title of "the apparent owner by the record" is not notice. Brown v. Volkening, 64 N. Y. 76, 83.

There are numerous cases, applying the rule of the Townsend case, where the grantee in an unrecorded conveyance from a near relative continues to reside on the land, or where grantor and grantee, in close family relationship to each other, are in joint occupancy. Adams-Booth Co. v. Reid (C. C.) 112 F. 106 (residence of sons with father) ; Motley v. Jones, 98 Ala. 443, 13 So. 782 (deed from husband to wife) ; Munn v. Achey, 110 Ala. 628, 18 So. 299 (occupancy of a widowed mother, together with her sons, who were holders of the record title, not notice of her equities) ; Wells v. American Mortgage Co. 109 Ala. 430, 20 So. 136; Jerome v. Carbonate National Bank, 22 Colo. 37, 43 P. 215; Harris v. McIntyre, 118 Ill. 275, 8 N. E. 182 (occupancy of brother and sister) ; Lindley v. Martin-

dale, 78 Iowa, 379, 43 N. W. 233 (mother allowed title to stand in name of son) ; Elliot v. Lane, 82 Iowa, 484, 48 N. W. 720, 31 A. S. R. 504; Pope v. Allen, 90 N. Y. 298; Patterson v. Mills, 121 N. C. 258, 28 S. E. 368 (deed to grantors' sisters) ; Derrett v. Britton, 35 Tex. Civ. App. 485, 80 S. W. 562; Puckett v. Reed, 3 Tex. Civ. App. 350, 22 S. W. 515. See 2 Pomeroy, Equity Jurisprudence (3 ed.) 1035, and note on 1037.

In Rankin v. Coar, 46 N. J. Eq. 566, 572, 22 A. 177, 11 L. R. A. 661, 662, we have a case a parallel in principle with this one. A widow lived with her son in a dwelling of which he was the fee owner but in which she had a right of dower, which she had released by recorded deed. *Held* that her continued possession was not notice of her rights under an unrecorded deed from her son against a subsequent *bona fide* purchaser from him. The rationale of that decision, and we think of the whole doctrine, was thus explained by the chancellor: "There must be such an occupation of the premises as a man of ordinary prudence, treating for the acquisition of some interest therein, would observe, and, observing, would perceive to be inconsistent with the right of him with whom he was treating, and so be led to inquiry."

Here, to repeat, the home was that of a widower and his adult son. From the mere fact that the former's possession continued as before the deed from father to son, certainly no prudent person could reasonably suspect that the father was retaining any secret interest or lien after his unequivocal conveyance to his son, who for a long time had resided, and continued to reside, with him on the property.

It follows that the order appealed from will be reversed and the case remanded with directions for a decision below conformable herewith, upon which judgment for appellant will be entered.

So ordered.