JOSEPH HOLMES and others, appellants, and BENJAMIN STOUT and JOHN WILLIAMS, respondents.

To destroy the title acquired by prior registry, it is necessary that the party should have notice of a prior subsisting outstanding title.    It is not enough that he has notice that a prior deed has been executed, if the notice conveys, also, the information that the title is not in existence.

The ground upon which the title acquired by a prior registry of a deed is lost, in case of notice to the second grantee of the existence of the prior conveyance, is that it is a fraud in the second grantee to take a deed, knowing or having reason to suspect the existence of the prior title.

Unless the information given concerning the existence of the previous conveyance was of such a character as to taint his conduct with fraud, as against those claiming under the prior title, the notice cannot affect the validity of his title.

Possession is sometimes notice of claim of title sufficient to put a purchaser on inquiry; but it must be an actual possession manifested by notorious acts of ownership, such as would naturally be observed by, and known to the public.

Cutting wood occasionally, under circumstances which might be regarded as so many trespasses quite as probably as acts of ownership, is not evidence of such possession.

The grantee of a *bona fide* purchaser without notice is not to be charged with the encumbrance or fraud, although directly known to him before he acquired his title; otherwise the loss must be visited upon the *bona fide* purchaser, as he would thereby be obliged to keep the property or to sell it at such a price as would enable his purchaser to discharge the encumbrance or purge the fraud.

----

The case sufficiently appears from the opinions delivered.

The cause was argued in the Court of Chancery, by *Peter Vredenburgh* and *J. F. Randolph*, of counsel with complainants, and *Daniel B. Ryall* and *Garret D. Wall* of counsel with defendants.    HAINES, C.

At the term of January, in the year eighteen hundred and forty-five, a decree was made dismissing the complainants' bill with costs.    From this decree an appeal was taken.

The Chancellor furnished the court with the following opinion, as containing the reasons for his decree.

HAINES, C. On the twenty-third of August, eighteen hundred and seventeen, Andrew Bell conveyed to John Holmes, jun., a tract of land, of sixty-four acres and four hundredths, in the county of Monmouth, for one hundred and nineteen dollars, and took his note for the money.

On the tenth of December, eighteen hundred and seventeen, John Holmes, jun., conveyed to John Holmes, sen., twenty-two acres, parcel of the lot of sixty-four acres and four hundredths, for fifty dollars.

On the twenty-seventh day of August, eighteen hundred and twenty-seven, John Holmes, jun., represented to Mr. Bell that he had lost his deed, and that it had not been recorded, and urged him to make out a new deed for the sixty-four acres and four hundredths of an acre lot to his brother-in-law, Richard Lane. Mr. Bell at that time declined making a new deed; but on the next day, Holmes, jun., and Lane called upon him, and urged him till he was induced to execute to Lane a new deed for the premises, dated the twenty-eighth of August, eighteen hundred and twenty-seven; and Lane then paid Mr. Bell sixty dollars on Holmes' note. Part of the money due on the note still remains unpaid. The deed was recorded on the seventeenth of September, eighteen hundred and twenty-seven.

In eighteen hundred and thirty, Lane died intestate, and his administrators, by virtue of an order of the Orphans Court, sold and conveyed the whole premises to Stout and Williams, the defendants, by deed dated the seventh of November, eighteen hundred and thirty-two, and recorded on the twenty-fourth day of November, eighteen hundred and thirty-two. The deed from John Holmes, jun., to John Holmes, sen., was not recorded until after the execution of the administrators' deed to Stout and Williams.

The complainants, claiming under John Holmes, jun., now file their bill, and seek a perpetual injunction, to quiet their title, and to set aside so much of the deed from Bell

to Lane as covers the twenty-two acres before conveyed to John Holmes, sen.

From the testimony in the case, Lane appears to have been a purchaser for a valuable consideration, and as his deed was duly recorded before the deed from John Holmes, jun., to John Holmes, Sen., his claim to the premises is to be preferred, unless it can be shown that he purchased *mala fide*, or with notice of the deed to John Holmes, sen. *Act of 7th June*, 1799, § 8, *Pat.* 399.

It is not enough to show that he had notice of the deed from Mr. Bell to John Holmes, jun. Lane purchased of Holmes, jun., and whether the conveyance was made by Holmes or Bell, was, as between them, immaterial.

There is no proof of actual notice to Lane, nor of any constructive notice, unless it be under the allegation of possession of the premises by Holmes, sen. Possession is sometimes notice of claim of title sufficient to put a purchaser on inquiry; but it must be an actual possession, manifested by notorious acts of ownership, such as would naturally be observed by and known to the public.

In this case there is no evidence of such possession. The premises consist of unenclosed woodland, except about two acres, which are included within the enclosure of an adjoining tract of forty-five acres. Upon it John Holmes, sen., occasionally cut wood, which cutting, under the circumstances, would be regarded as so many trespasses quite as probably as acts of ownership.

As to possession being notice, see *Daniels* v. *Davison*, 16 *Ves.* 249; *Taylor* v. *Stibbert*, 2 *Ves.* 440; *Smith* v. *Low*, 1 *Atkyns* 490; *Allen* v. *Anthony*, 1 *Merivale* 282; 2 *Fonb. Eq. B.* 2, *ch.* 6, § 3; *and note (m)*; *Hanbury* v. *Litchfield*, 2 *Mylne & Keene* 629, 632-3; *Flagg* v. *Mann*, *Sumner's R.* 486, 554, 555.

If Lane, then, were a *bona fide* purchaser without notice, the sale to the defendants by the administrators may be good, even though the defendants had such knowledge and notice of all the circumstances of the case. For it is

well settled as a general rule, that the grantee of a *bona fide* purchaser without notice is not to be charged with the encumbrance or fraud, although directly known to him before he acquired his title ; otherwise the loss must be visited upon the *bona fide* purchaser, as he would thereby be obliged to keep the property, or to sell it at such price as would enable his purchaser to discharge the encumbrance or purge the fraud. *Harrison* v. *Forth, Prec. in Ch.* 51 ; 2 *Fonb. Eq. B.* 2, *ch.* 6, § 2 ; *Lowther* v. *Carlton,* 2 *Atk.* 242 ; *Ferrars* v. *Cherry,* 2 *Vern.* 383 ; *Mertins* v. *Jolliffe, Amb. R.* 313 ; *Sweet* v. *Southcot,* 2 *Brown's Ch, R.* 66 ; *McQueen* v. *Farquhar,* 11 *Ves.* 477–8 ; *Ingram* v. *Pelham et al., Amb.* 153 ; *Alexander* v. *Pendleton,* 8 *Cranch* 462 ; *Fitzsimmons* v. *Ogden,* 7 *Cranch* 2.

In this view of the case, it is unnecessary to inquire into the alleged notice to the defendants. The bill must be dismissed with costs.

The appeal was argued at June term, 1855, by *Joel Parker* and *J. F. Randolph,* of counsel with appellants, and *W. L. Dayton,* of counsel with respondents.

The following opinions were now delivered.

GREEN, C. J. The controversy in this cause relates to a tract of 22 acres of land in the county of Monmouth. The parties, complainants and defendants, both claim title under Andrew Bell, who it is admitted was seized in fee of the premises. The complainants claim as heirs at law of John Holmes, sen., who died intestate on the 13th of September, 1831. John Holmes, sen., derived title from Andrew Bell, by means—first, of a deed from Bell to John Holmes, jun., dated 23d August, 1817, for 64.04 acres of land, which deed has never been recorded ; and secondly of a deed from John Holmes, jun., to John Holmes, sen., dated 10th December, 1817, for 22 acres. Acknowledged on the ——— 1820, and recorded on the 19th of October, 1827.

The defendants derive title from Andrew Bell, by means of a deed from Bell to Richard Lane, dated and acknowledged 28th August, 1827, for 64.04 acres, and recorded on the 17th of September, in the same year, and of a deed from the administrators of Lane to the defendants, by virtue of an order of the Orphans Court of the county of Monmouth.

The deed from Andrew Bell to John Holmes, jun., under which the complainants claim, never having been recorded, the later deed from Bell to Lane, under which the defendants claim, has acquired the priority by virtue of the registry act, *Rev. St.* 643, § 18, unless either Lane is not, in the language of the act, a *bona fide* purchaser without notice, or unless the priority is lost by fraud.

The bill of complainant charges, that the deed from Bell to John Holmes, jun., was fraudulently kept by the grantee from being recorded, and that the subsequent deed from Bell to Lane was procured by a conspiracy and collusion between John Holmes, jun. and Lane, for the purpose of defrauding John Holmes, sen., and those who might hold under him. The bill further charges, that at the time of the conveyance from Bell to Lane, Lane perfectly well knew of the deed from Bell to Holmes, jun., and also of the deed from John Holmes, jun., to John Holmes, sen., and that John Holmes, sen., was then in possession of the granted premises. The bill further charges, that the defendants purchased at the administrators' sale with full knowledge of the complainants' title, and with the view of defeating that title, and of defrauding those claiming under it.

The case made by the bill is one of actual fraud against John Holmes, jun., and Richard Lane. That case is not supported by the evidence. There is no proof of actual fraud as against Richard Lane. No proof that when he took title from Bell, he knew of the conveyance to John Holmes, sen., or of the existence of any outstanding title

adverse to the title which he acquired by virtue of his purchase and deed.

In the absence of proof of actual fraud, the complainants nevertheless insists, that the title to Richard Lane has acquired no priority over the complainants' title by reason of priority of registry, because Lane was not a *bona fide* purchaser for a valuable consideration without notice of the prior deed from Bell to Holmes.

The deed to Lane purports to have been made for a valuable consideration. That is sufficient evidence of the payment of the consideration until the contrary is proved. The evidence, so far as it goes, supports rather than impugns the recital of the deed. Lane, then in the absence of proof of actual fraud, must be regarded as a *bona fide* purchaser for a valuable consideration, unless he had notice of the prior title under which the complainants claim. The complainants insist that he had both actual and constructive notice of that title.

The evidence shows unequivocally that, at the time of the conveyance from Bell to Lane, Lane was informed that a previous conveyance had been made by Bell to John Holmes, jun. The fact was distinctly and repeatedly stated by Bell, and upon this ground he at first refused to make the conveyance to Lane. But Holmes, to whom that conveyance was alleged to have been made, was present at the time, and denied the existence of any such title. He alleged that he had never received the deed, or if he had, that it was lost. Lane moreover purchased the title of Holmes, jun., and at his instance, took the conveyance from Bell. He had notice of the prior conveyance sufficient to put him upon inquiry. But what inquiry could he have made that would have been availing? The very party to whom the prior conveyance was made denied its existence, and requested the conveyance to be made to Lane. The prior deed was not upon record, nor was there upon record any deed from Holmes, the first grantee, to any subsequent purchaser. There is certainly

strong ground for apprehension that John Holmes, jun., acted fraudulently.    It is scarcely credible that he had for gotten that he had received a deed for the property, and had subsequently conveyed it, by two distinct deeds, to separate parties.    But, as has been said, there is no proof in the cause, and no reasonable ground for assuming that Lane knew of these conveyances, or was in any way a party to the fraud.

To destroy the title acquired by prior registry, it is necessary that a party should have notice of a prior subsisting outstanding title.    It is not enough that he has notice that a prior deed had been executed, if the notice conveys, also, the information that the title is not in existence. The ground upon which the title acquired by a prior registry of a deed is lost in case of notice to the second grantee of the existence of the prior conveyance, is that it is a fraud in the second grantee to take a deed, knowing or having reason to suspect the existence of the prior title.    All the cases proceed upon this ground.    Unless the information given to Lane touching the existence of a previous conveyance, was of such character as to taint his conduct with fraud, as against those claiming under the prior title, the notice cannot effect the validity of his title.    But how can his conduct in taking title from Bell be deemed fraudulent against the owners of the prior title?    It was surely not fraudulent as against John Holmes, jun., for *he* denied the existence of any prior title, and it was at his instance and by his procurement that Lane took his title.    Nor was it fraudulent as against John Holmes, sen., for of his title Lane had no notice, and no means of acquiring knowledge, had he been put upon inquiry.

The remaining inquiry is, whether in the absence of actual notice, Lane had constructive notice of the prior title.    It is insisted that the possession of a part of the premises by John Holmes, sen., at the time of the con-

2 N*

veyance to Lane is constructive notice to him of the complainants' title.

The rule in equity is, that whatever is sufficient to put a party upon inquiry is good notice. In *Flagg* v. *Mann*, 2 *Sumner* 554, Justice Story said, the rule in equity seems to be, that when a tenant or other person is in possession of the estate at the time of the purchase, the purchaser is put upon inquiry as to his title; and if he does not inquire, he is bound in the same manner as if he had inquired, and had positive notice of the title of the party in possession.

This will be found to be the recognised and well settled doctrine of courts of equity. *Daniels* v. *Davison*, 16 *Vesey* 249; *S. C.* 17 *Vesey* 433; 2 *Fond. Eq.*, ch. 6, § 3; *Hall* v. *Smith*, 14 *Vesey* 426; *Taylor* v. *Stilebert*, 2 *Vesey* 440; *Eyre* v. *Doepain*, 2 *Ball & B.* 290; *Duke* v. *Page*, 2 *Green's Chan. R.* 154.

The same doctrine is adopted, both by courts of law and of equity, in the construction of the registry acts. The subject underwent a very full discussion in the case of *Tuttle* v. *Jackson*, before the Court of Errors of the state of New York. Walworth, C., in delivering the opinion of the court, stated the law thus: If the subsequent purchaser know of the unregistered mortgage at the time of purchase, he cannot protect himself against that conveyance; and whatever is sufficient to make it his duty to inquire as to the rights of others, is considered legal notice to him of those rights. Here Tuttle, the person to whom the unregistered deed was given, was in the possession of the premises at the time of the sheriff's sale, and this was good constructive notice to the subsequent purchaser to make it his duty to inquire as to the rights of the person in possession. * * * * * * By our registry acts, the unregistered deed is only void as against a subsequent *bona fide purchaser*. The rule of equity here is therefore the rule of law; and whatever would in equity charge the party with notice of the equitable rights of a prior pur-

chaser or encumbrancer, so as to deprive him of the privilege of pleading that he is a *bona fide* purchaser without notice, must in a court of law be sufficient to protect the legal rights acquired under the unregistered decree against the subsequently recorded conveyance. 6 *Wend.* 226–7.

Our own statute (*Rev. Stat.* 644, § 18,) like that of New York, makes the unregistered deed void only as against a subsequent *bona fide purchaser.* The argument therefore is applicable here.

In *Norcross* v. *Wedging,* 2 *Mass.* 508, Ch. Justice Parsons said: "The provision of the statute for registering conveyances is to prevent fraud by giving notoriety to alienations. But if the second purchaser had notice of the first conveyance, the intent of the statute is answered, and his purchase afterwards is a fraudulent act," (in other words, he is not a *bona fide* purchaser). This notice may be express, or it may be implied from the first purchaser being in the open and exclusive possession of the estate under his deed. The same principle is declared in *Colby* v. *Kenniston,* 4 *New Hamp.* 262, and in *Davis* v. *Blunt,* 6 *Mass.* 487.

Chancellor Kent states the doctrine in a somewhat modified or more guarded form, thus: "The statute of New York postpones an unregistered deed only as against a subsequent *purchaser in good faith and for a valuable consideration,* and this lets in the whole of the English equity doctrine of notice. * * * The doctrine of notice equally applies, however, as I apprehend, throughout the United States, and it everywhere turns on a question of fraud, and on the evidence necessary to support it. In pursuance of that policy, and in order to support at the same time the policy and injunctions of the registry acts in all their vigor and genuine meaning, implied notice may be equally effective with direct and positive notice, but then it must not be that notice which is barely sufficient to put a party upon inquiry. Suspicion of notice is not suf ficient. The inference of a fraudulent intent affecting

the conscience must be grounded on clear and strong circumstances in the absence of actual notice. The inference must be necessary and unquestionable." 2 *Kent's Com.* 171–2.

Every possession will not amount to implied notice. It must be an actual and exclusive possession manifested by notorious acts of ownership, and such as would naturally be observed and known by others. Merely cutting wood or pasturing cattle on unenclosed woodland, repairing the fences, and even removing an old house standing on part of the land, which may be regarded as mere acts of trespass as well as of ownership, have been held insufficient. Nor does even actual open notorious possession of the land necessarily and in all cases create a presumption of notice. If, for example, the first purchaser were previously in possession as lessee, and after purchase continue in possession as grantee without any actual visible change in the character of his possession, this could not operate as notice to a second purchaser, who knew of the previous possession as lessee, and had no notice of the actual change of title. *McMeehan* v. *Griffing*, 3 *Pick.* 149.

The tract in question, with the exception of three and a quarter acres, is unenclosed woodland, in which John Holmes, sen., was accustomed to cut wood. Three and a quarter acres were cleared land, enclosed and in the actual occupation of John Holmes, jun. It appears, however, that owing to a mislocation of the survey, this three and a quarter acres were cleared and enclosed with a fence upon a forty-five · acre tract, purchased by John Holmes, sen., of William Holmes many years previously to his purchase of Bell. It was held and occupied as a part of the purchase from William Holmes. It was enclosed, and in the open notorious occupation of John Holmes, sen., long before his purchase from Andrew Bell. How is it possible, then, that the possession of this lot by John Holmes, sen., should have been notice to Richard Lane of the conveyance from Bell to Homes? To pre-

sume such notice would be obviously a presumption without proof and against probability.

There being evidence neither of an actual or presumptive notice to Richard Lane, or at the time he acquired title of a previous outstanding title acquired from Andrew Bell, Lane is a *bona fide* purchaser without notice; and consequently, he had a valid title acquired by priority of registry. The previous conveyance by Andrew Bell to John Holmes, jun., as against Lane, is, by the terms of the statute, void and of no effect.

This being the case, it is immaterial whether Stout and Williams, at the time of their purchases, had or had not notice of the title of the complainants. The rule is well settled, that if a person having notice of a previous outstanding title purchase from one having no notice, the second purchaser may protect himself by want of notice in his vendor; in other words, the title of the first purchaser being perfect, he may transmit a perfect title to his vendee. The rule is obviously necessary to secure to a *bona fide* purchaser without notice the full benefit of the purchase. *Brandlyn* v. *Ord*, 1 *Atk.* 571; *Mertins* v. *Jolliffe, Ambler* 313; *Sweet* v. *Southcote*, 2 *Bro. Chan. Cas.* 66; *Bumpeer* v. *Platun*, 1 *Johns, Ch. R.* 219; 2 *Fonb. Eq.* 148, *B.* 2, *ch.* 6, § 2, *note i.*

The decree of the Chancellor should be affirmed with costs.

POTTS, J. This is an appeal from a decree of the Chancellor dismissing the complainants' bill upon the final hearing with costs.

The bill was filed by Joseph Holmes and others, who claim title to a tract of 22 acres of land in Dover, now Ocean county, being part of a tract which, they allege, Andrew Bell conveyed to John Holmes, jun., and which 22 acres he conveyed to John Holmes, sen., under whom the complainants hold as heirs or purchasers. The defendants, Stout and Williams, are in possession of the

land under a deed from the administrators of Richard Lane, deceased, who was also a purchaser from Bell. The prayer of the bill is, that the title deed of the defendants may be decreed to be null and void ; may be delivered up to the complainants ; that the defendants may be enjoined against setting up their title to the premises ; and that the complainants' title may be declared good and operative, and. an account of rents and profits taken.

It appears in evidence that, on the 23d August, 1817, John Holmes, jun., purchased of Andrew Bell a tract of 64.04 acres of land, for the consideration of $119, for which he gave his promissory note, and took from him a deed of conveyance, *which was never recorded.* On the 19th of October, 1817, John Holmes, jun., sold and conveyed to John Holmes, sen., 22 acres, being part of the same premises, which deed was acknowledged on the 2d August, 1820, but was *not recorded until the 19th October,* 1827. On the 27th August, 1827, according to Andrew Bell's testimony, the said John Holmes, jun., in company with Richard Lane, called upon Bell, and said he did not recollect getting his deed from him, as he could not find it among his papers. Bell told him he was sure he had it, and must search among his papers for it, and if he could not find it by the October term of the court, he, Bell, would bring with him the original return, and do what might be advisable in relation to giving him another deed. The next day John Holmes, jun., and Lane called again on Bell, and prevailed on him to execute a deed to Lane, to whom Holmes said *he had sold the land.* This deed to Lane was made for the reason that Holmes assured Bell the deed to himself was lost ; and Holmes gave Bell, at the time, a stipulation in writing under seal, that if the first deed should ever be found, it should not be used as a title paper, but should be cancelled. The object of making the deed to Lane was to save the expense of another conveyance. Lane paid the consideration money he had agreed to give for the land, $60, to Bell. and it was credited on

John Holmes', sen., note for $119, which Bell still held. Lane was present at both interviews, and heard all that passed.  Lane *had his deed recorded on the* 17*th September*, 1827, a little more than a month before the deed for the 22 acres, from John Holmes, jun., to John Holmes, sen., was put on record.

The complainants charge, that the execution and delivery of this deed from Bell to Lane, was procured and brought about by a conspiracy and collusion between John Holmes, jun., and said Lane, who were brothers in law, for the purpose of defrauding the said John Holmes, sen.; that it was with this design that John Holmes, jun., omitted to put his deed of 1817 from Bell on record, and has either destroyed it or keeps it concealed ; that, Lane, when he took the deed from Bell, knew of the prior conveyances from Bell to Holmes, jun., and also of the conveyance from Holmes, jun., to Holmes, sen., of the 22 acres parcel of the premises, and also knew that Holmes, sen., was then in possession of the lot.  And the complainants also charge, that Stout and Williams, when, in 1832, they purchased the tracts of the administrators of Lane, knew of the first deed to Holmes, jun., and of his conveyance of the 22 acres to Holmes, sen.; and also knew that Holmes, sen., and his heirs and the complainants had been in possession of the premises ever since the purchase by Holmes, sen., and that they, the defendants, purchased with a view to defeat the Holmes, sen., title, and defraud those who held under him.

The defendants, in their answer, deny that Bell ever made any deed for the land to John Holmes, jun., and say, if he did, they never saw it, and never heard that such a deed had been made until after their purchase. They further deny that they ever heard of a deed having been made by John Holmes, jun., to John Holmes, sen., until since the filing of this bill.    They deny all fraud and collusion charged against them in the bill, and also deny that John Holmes, sen., or his heirs or the complainants,

ever had possession of the premises in question; but, on the contrary, allege that Lane always had the possession during his life, and that they have had the possession since their purchase.

There is nothing in the evidence in the cause which goes to establish the charge of fraud and collusion on the part of Richard Lane. Indeed, this ground of relief was not much insisted on by the counsel for the appellants in their argument. But they put their case upon the title derived through John Holmes, sen., and John Holmes, jun., from Bell; and insist, that though the deed from Bell to John Holmes, jun., has never been recorded, and the deed from John Holmes, jun., to John Holmes, sen., was not recorded until more than a month after that from Bell to Lane; yet that their title must prevail over the Lane title, because, as they allege, Lane was not a *bona fide* purchaser for a good consideration without notice of the prior unrecorded conveyance.

There is satisfactory evidence of the conveyance by Bell to John Holmes, jun., on the 23d August, 1817, of the 64 acres. Bell himself testifies with great positiveness to the fact; and he produces the original return of the tract, made to himself by endorsements, on which it appears that the conveyance was made at that time, and the note for $119 taken as the consideration. He produces the note dated the 23d August, 1817, with the receipt of the $60 paid by Lane, in 1827, endorsed on it. And a certified copy of the deed for the 22 acres, from John Holmes, jun., to John Holmes, sen., is also produced, dated December 10th, 1817, which recites a conveyance of the 64 acre tract from Bell to Isaac Holmes, jun., though with blanks for the dates.

But these deeds were unrecorded at the time that Lane purchased. And if he stands in the situation of "a *bona fide* purchaser for a valuable consideration, not having notice thereof," within the meaning of the 8th section of the act respecting conveyances (*Paterson's L.* 399), which

governs this case, he is entitled to the benefit of the provision, that such prior unrecorded conveyances " shall be void and of no effect against " him. Then—

I. As to the deed from Bell to John Holmes, jun,, of 23d August, 1817. It is clear, from the evidence in the cause, that Lane had notice of the *fact*, that Andrew Bell had, on the day last mentioned, made a deed of conveyance of the 64.04 acres to the said John Holmes, jun.; for Holmes went with him to Bell, on the 27th August, 1827, and in his presence and hearing the matter of this deed was talked over; and although Holmes at first said he had no recollection of having received it, yet Bell convinced him it had been executed and delivered to him.⸱ But we must take the whole of what passed in the presence of Lane together; and we find, that though Holmes, jun., finally admitted he had received the deed, yet he affirmed that he could not find it, that it was lost; and it was on this account, and to supply the place of the lost deed to Holmes, that the deed to Lane, to whom Holmes said he had sold the property, was made; and at the same time Holmes stipulated to cancel the lost deed, if found, and that it should never be set up as a title. Of what, then, had Lane notice? Simply of the fact, that a deed had been executed and delivered in 1817, had been lost or mislaid, and was thenceforth to be considered and treated as a void deed, and to be inoperative as an instrument of title.

Now fraud, or *mala fides*, is the ground upon which courts proceed in dealing with these cases of notice. If one takes the title to an estate, knowing at the time that the right is in another, that some one else has a title, though unrecorded, derived from the party with whom he treats, it is a fraud in him to take advantage of the want of registry to defeat the outstanding title by taking a conveyance to himself, and is dealt with accordingly. *Le Neve* v. *Le Neve*, 1 *Ves. sen.* 64; *Jolland* v. *Stainbridge*, 3 *Ves.* 478; *Dey* v. *Dunham.* 2 *Johns. Ch. R.* 182; *Jackson* v.

*Burgot,* 10 *Johns. R.* 462; 1 *Story's Eq. Jur.* § 397; 4 *Kent's Com.* 171.

And so, whatever is sufficient to put a person upon inquiry is good notice. But, as was well said by the court in *Boggs* v. *Varner,* 6 *Watts & S.* 469, 474, "as every presumption is in favor of the subsequent purchaser, when the former owner is guilty of neglect, his title cannot be postponed, except by evidence which taints his conduct with fraud. And this, it is obvious, ought not to be done by testimony in its nature vague and indefinite and leading to no certain results, such as that he ought to have known of the prior title, because he lived near the owner, in the same town, perhaps, or on the next lot; that he was well acquainted with him, or because the title was well known to others. This may well be true, and yet at the time he pays his money he may be ignorant of any other title than his own. It is not just that inferences should be strained in favor of the person by whose default. the mischief has been done. See *Jones* v. *Smith,* 1 *Hare* 55, and cases there cited.

In *Rogers* v. *Jones,* 8 *New Hamp.* 264, where a vendor exhibited a prior deed for the land to the party about to purchase, and told him, at the same time, that it had never been delivered, it was held that this statement, fortified as it was by the actual. possession of the instrument, was not sufficient to put the purchaser on inquiry of the grantee named in the deed, though the deed had in fact been delivered, and had been handed back to the vendor on the faith of a promise to have it recorded.

These cases establish and illustrate the rule, that upon questions of this nature the only proper subject of inquiry is, whether the second purchaser has acted in bad faith; for if he had actual knowledge that the property was in some way charged, encumbered, or affected, or the circumstances satisfy the court that he fraudulently turned away from the knowledge of facts which the *res gestæ* would naturally suggest to a prudent mind, in order to

avoid notice, he is not entitled to the protection of the statute. But the case before us is that of one who purchased in the presence of the party to whom the prior conveyance was made—purchased not only with the consent, but in fiulfilment of an agreement made with the first purchaser, the party who had received the prior deed, and who was then protesting that he had lost it, and stipulating to cancel it if ever found, and who, in fact, received the benefit of the purchase money. There is surely no fraud in this transaction, no mischief perpetrated which it was the intention of the statute to prevent. Lane was a purchaser, certainly so far as the deed from Bell to John Holmes, jun., is concerned, not having notice within the meaning of the statute. It has been suggested that the notice to Lane, that John Holmes, jun., *had once had a deed for the land,* is decisive, because it apprized Lane of the fact, that, whatever Holmes might say to the contrary, he had had the power, and *might* have exercised it, of conveying to somebody else. But the conclusive answer is, that this amounted to neither actual nor constructive notice that any such conveyance had been made, and no knowledge of the existence of any such deed is brought home to Lane, nor was any such on record.    For—

II. As to the deed from John Holmes, jun., to John Holmes, sen., it is not pretended that Lane had any actual notice of that at the time he purchased. There is no evidence that Lane had any information or knowledge that John Holmes, jun., had conveyed away the tract, or any part of it, to anybody. All that is in evidence of what was said and done at the time of the purchase was calculated to negative such an idea. We are not at liberty to guess, because they were brothers in law, that therefore Lane must have known of the fact. And even if Lane had, out of abundant caution, undertaken to inquire whether John Holmes, jun., had sold to anybody, there was no clue to guide him in the inquiry, for there was no

deed either from Bell or from John Holmes, jun., upon record.

It is said that John Holmes, sen., had possession of the tract at the time, and that that was constructive notice. Undoubtedly the possession of the premises by the prior purchaser may operate as a notice, but it must be an open, actual, unequivocal possession, and of a nature to put a purchaser on his guard, and not to mislead him. *Bush* v. *Golden,* 17 *Conn,* 594; *Butler* v. *Stevens,* 26 *Maine* 484; *Henrick* v. *Powell,* 9 *Alabama,* 409; *Mecham* v. *Griffing,* 3 *Pick.* 149.

In the last case cited, it was held, that occasional acts of ownership, by pasturing cattle or removing fences, would not be sufficient, unless they were so far *continuous* that, if done by wrong under a claim of title, they would lose the character of mere *trespasses,* and acquire that of *disseisin.* And the occasional acts of cutting fire-wood on an open unenclosed wood lot is within the same principle, for there is nothing in such an act to distinguish it from a trespass. The tract in question was timber land lying out in common; it lay adjoining other unenclosed land of the same description. The only evidence of cutting, up to the time of Lane's purchase, in 1827, is that of Jacob Holmes, who says his father, John Holmes, sen., used to get his fire-wood off of that and the other woodland he owned adjoining it, and was not particular on which part he cut. This is not evidence of such a possession as could operate as a notice of a claim of title.

Upon the whole, it is clear that, so far as Lane is concerned, his title was acquired in good faith and without notice.

III. The counsel for the appellants, assuming that they had successfully assailed Lane's title, contended that they were entitled to the relief prayed for in their bill *against Stout and Williams,* the appellees, on the ground, that at the time they purchased the land, in 1832, at a sale made by the administrators of Lane under an order of the

Orphans Court, *they* had notice, both actual and constructive, of the Holmes, sen., title.

But to this the decisive answer is, that if Lane was a *bona fide* purchaser without notice of the prior title, it is of no consequence what notice or knowledge either Lane or his grantees may have subsequently received. For the title, thus legally acquired, could not be defeated by anything subsequently brought to the notice of either. The registry act would furnish no protection at all, if the title of a *bona fide* purchaser, not having notice of a prior conveyance at the time of the purchase, could be affected by any notice afterwards given to him; and as he could not be, his grantees cannot be. 71 *Law Lib.* 131 (2 *White & Tudor, Cas. in Eq.*); 1 *Story's Eq. Jur.* § 409, 410.

The decree of the Court of Chancery is, in my judgment, right, and should be affirmed.

Decision affirmed by the following vote:

*For affirmance*—CHIEF JUSTICE, Judges ARROWSMITH, CORNELISON, ELMER, HUYLER, OGDEN, POTTS, RISLEY, RYERSON, VALENTINE, WILLIAMSON, WILLS.

*For reversal*—None.