On March 19th, 1925, the owners of a small office building in the city of Passaic contracted, in writing, to sell the same to defendant Kantrowitz for the sum of $206,500. The complainant, together with Kantrowitz, one Weinberger, and three others, had previously, or at the time, entered into an agreement to purchase the property, and pursuant thereto the contract mentioned had been taken in Kantrowitz's name. Each of the beneficial owners was to pay one-sixth *Page 168 
of the purchase price and incidental expenses, and each was to become the owner of an undivided one-sixth interest. Subsequently, on the 3d day of April, 1925, Kantrowitz assigned the contract to Weinberger, who thereupon purchased from each of the joint venturers, except the complainant, his respective share or interest in the contract. The complainant at that time paid to Weinberger his share of the deposit which had already been given to the owners and received from Weinberger an assignment of an undivided one-sixth interest in and to the premises. Later on, Weinberger reassigned the five-sixth interest remaining in him to the defendant Kantrowitz, and the latter, on June 1st, 1925, without any warning to the complainant, assigned the contract for the entire property to the defendant Rose Zucker without any reservation of the assignment of the above-mentioned one-sixth to the complainant. Thus the complainant finds himself in the position where Mrs. Zucker claims the entire property subject to no rights of the complainant therein. Complainant now prays a temporary injunction restraining the present holders of the legal title from conveying, and Mrs. Zucker from accepting, title.
Inasmuch as the complainant never recorded his assignment, and Mrs. Zucker had no actual notice or knowledge thereof, her rights under the assignment of June 1st cannot be impeached, unless she is chargeable with constructive notice by reason of the fact that the complainant, together with his partners, occupied offices in the premises under consideration. The complainant's tenancy appears to have commenced about a year and a half ago, and, so far as the moving papers show, was the ordinary occupation of offices by a law firm. Other offices were occupied by others, and some stores on the first floor by merchants.
The rule of constructive notice created by possession of real property grew up at a time prior to the developing of the rather perfect recording statute that now exists in this state. It was said that fraud is the true ground in cases involving the doctrine of notice. LeNeve v. LeNeve, 1 Ves. 64. The same authority lays down the rule that it is fraudulent *Page 169 
to get in the legal estate when it is known that the right was in another. So it has come to be the settled rule that open, notorious, visible, unequivocal, exclusive and uninterrupted possession is notice, and puts a purchaser dealing with the record owner under a duty of inquiry and constitutes constructive notice of everything he would have learned by inquiry from the person in possession. Wood v. Price, 79 N.J. Eq. 620. The authority just named, I think, puts New Jersey in the category of jurisdictions that have carried the notice implied from possession and occupation of land to its logical conclusion. But this rule, like any other, is to be applied, not blindly, but according to the surrounding circumstances affecting the rationale of the doctrine of notice.
In the case at bar there is not the simple transaction of the purchase of a dwelling-house or a farm or a piece of woodland with someone in visible occupation or possession thereof, but presents the case of a building constructed to accommodate a considerable number of tenants, and which, in fact, was so occupied. The very purpose of the building is to permit the leasing of suites or stores to a number of independent persons and from the rent so acquired to establish an income for the owner. Under these circumstances to charge a prospective purchaser with notice of any right, title or interest of one of the tenants, beyond the right of tenancy would be absurd. While not so large or occupied by so many, I think that it might as well be said that one contemplating the purchase of one of the great office buildings in the metropolitan district would be under a duty to personally interview every one of the hundreds of tenants occupying the offices thereof. Can it be said that the rule should be extended to cover the purchase of a large hotel?
The correct statement of the doctrine under consideration discloses that by the authorities, as well as common sense, it was never intended that the rule should be extended to cover a situation such as the present one. Professor Pomeroy, in his Eq.Jur. § 620, says that for one to successfully impute notice to a subsequent grantee or encumbrancer "his possession *Page 170 
must be an actual, open, distinct, notorious and exclusiveoccupancy of the land in question. No mere occupation of the premises in common or in connection with a third person, and no mere exercise of acts of ownership equivocal in their nature over the land will then suffice." Every author and every well-written opinion accentuates the fact that only exclusive andunequivocal possession will satisfy the rule. To like effect isColeman v. Barklew, 27 N.J. Law 357, where it is said that the possession "must be actual, distinct and unequivocal. It must, moreover, be visible and manifested by notorious acts of ownership. Holmes v. Stout, 3 Gr. Ch. 492," and other authorities. In Cox v. Devinney, 65 N.J. Law 389, the chief-justice, in dealing with the present subject, said as follows:
"While the general rule is that possession of land is notice to a purchaser of the possessor's right therein, nevertheless such possession, to be effectual as notice, must be not only exclusive and uninterrupted, it must also be open, notorious and visible."
In Rankin v. Coar, 46 N.J. Eq. 566, the owner of an ordinary dwelling-house died intestate, and, subsequently, his widow released her dower to the only heir, and the same was recorded. Contemporaneously, the heir entered into an agreement with his mother, in writing, that she should have the use and occupation for life of the rooms then occupied by her in the premises aforesaid. This agreement was not recorded. Subsequently, the son executed a mortgage upon the property, and the mortgagee foreclosed. At the sale, under the fi. fa., the widow gave notice of her claim, and, subsequently, she filed a petition in the cause to have the rooms so occupied by her declared to be hers during her life by force of the agreement mentioned. The court of errors and appeals, unanimously reversing this court, held that her possession of the rooms then in question did not come within the true meaning of the doctrine:
"Possession, to give notice or to make inquiry a duty, must be open, notorious and unequivocal. There must be such an occupation of the premises as a man of ordinary *Page 171 
prudence, treating for the acquisiton of some interest therein, would observe, and, observing, would perceive to be inconsistent with the right of him with whom he was treating, and so be led to inquiry."
To the same effect is Holmes v. Stout, 4 N.J. Eq. 492;affirmed, 10 N.J. Eq. 419.
There is another feature of this case that would make it difficult to see how application of the doctrine under consideration could be equitably applied against Mrs. Zucker. When the contract of sale was executed between the record owners and Kantrowitz it was prepared in the office of the complainant's firm and witnessed by one of the partners thereof and the same partner who now appears as solicitor of record for the complainant. While not appearing in the pleadings and proofs, it was not denied that the acknowledgment of the contract was made before the complainant himself. In that instrument it was recited that the premises were to be conveyed "subject also to the following leases and the terms and conditions therein mentioned." Among the instruments referred to is the following:
"Lease held by Feld, Weiss Feld for the term of five years covering rooms Nos. 3, 4 and 5 at the yearly rental of $1,200, which has been running for about one year, with privilege of renewals for five years."
These lessees are the firm of which the complainant is the senior member. When Mrs. Zucker examined, and, finally, purchased the rights of Kantrowitz under this contract, it is fair to assume that any remote doubt there might have been in her mind as to the security of purchasing these premises without inquiry of the complainant, would have been dissipated by the provisions just recited. Her position is analogous to that of a purchaser who finds that the occupant's possession of the land is not inconsistent with his rights as disclosed in the public records. In Wood v. Price, supra, the lease of which Price had notice had expired, and it was for that reason the court of errors and appeals decided that the exception to the rule did not apply. *Page 172 
I do not wish to put the decision of this case upon any such narrow point as the one just mentioned, but prefer to hold that, as between an unrecorded instrument in favor of a tenant in a building such as this, and a subsequent purchaser without either knowledge or actual notice, for valuable consideration, the mere fact of possession and occupancy does not put the subsequent purchaser on inquiry. It is elementary that when one of two innocent people must suffer as the result of the wrongful act of a third party, and one of such persons has his own carelessness to thank for the situation in which he finds himself while the other is blameless, the position of the latter is the stronger. Of course, it will be borne in mind that it is considered that the different character of the premises in question distinguishes this case from the properties involved in any of the other cases upon this subject. Neither am I dealing with the right of a tenant as such, even in this kind of a building, that appears in his lease. And, above all things, this case is to be distinguished from any case in which it is shown that in any other way the subsequent purchaser is not so in good faith and for valuable consideration.
All of the cases cited by complainant's counsel are authority for the general rule which has been dealt with, but in none of them is there a state of facts similar to those to be found in the case sub judice. It is argued in complainant's behalf that there was nothing to indicate to Mrs. Zucker that the complainant had no interest in the property other than a leasehold. With that I have already dealt, and I think it is too clear to require any further argument that she was fully justified in supposing that one who undertakes to preserve his rights in a formal instrument will always be presumed to have protected all of his rights, and certainly has not been at the pains to safeguard the lesser, and leave the entire world in ignorance of the more valuable, right.
Complainant further says that, if Mrs. Zucker's argument is sound, it would necessarily follow that she had the right to assume that Kantrowitz had never assigned the interest *Page 173 
he acquired on March 19th, when the contract of sale was executed. In the absence of knowledge or notice she would have exactly that right. When one finds the title in another, and there is nothing to acquaint him with anything that that other has done to alienate or modify his title, the former is at liberty to assume that the title remains in the latter in the condition in which he received it. In the present instance Mrs. Zucker received no knowledge, and there was nothing to put her upon notice of any dealings by Kantrowitz with the subject-matter after he received it.
It is also said that because Mrs. Zucker did not content herself with what was told her about the premises by Kantrowitz, but went further and secured from one of the vendors detailed information as to such matters as the rents and carrying charges, she should have gone further and inquired of the complainant as a tenant as to his rights. In view of what has already been said, this, of course, begs the question.
Finally, the complainant maintains that Mrs. Zucker is not entitled to take the entire property because she has not yet paid the entire purchase price, citing a paragraph in 39 Cyc. (atp. 1763). The difficulty with that position is that she has, in fact, paid the full purchase price required by her contract with Kantrowitz. She says in her affidavit that, on June 1st, 1925, before she had any notice or knowledge of the complainant's claim, she repaid Kantrowitz the deposit he had paid to the vendor and "paid him a profit on said contract of $7,500." In this she is corroborated by her attorney and by Kantrowitz.
The case made out by the complainant's bill undoubtedly shows one in which he should be compensated by someone, but it does not show a state of facts in any way impeaching the good faith of Mrs. Zucker, either actually or constructively.
The result is that no interlocutory injunction will be advised, and in order that the views herein expressed may be carried out, the preceding restraint, including the injunctive order of July 27th, 1925, will be vacated. *Page 174