ARCADE REALTY HOLDING CORPORATION, complainant,

*v.*

CHARLES G. HILDINGER et al., defendants.

[Decided October 18th, 1928.]

*Mr. Alexander Budson* and *Mr. James J. McGoogan,* for the complainant.

*Mr. Harry Heher,* for the defendants.

BUCHANAN, V. C.

In 1925 Frederick A. Duggan leased the premises Nos. 13-17 East State street, Trenton, New Jersey, to Messrs. Lissner, Krueger and Goldberg for sixty-three years, subject to existing tenancies, and assigned his lessor's interest in such tenancies.

Among such existing tenancies was a lease in 1920 from Duggan to Hildinger and Bishop, of a part of the premises, for a term of ten years. Hildinger and Bishop operated

billiard and pool parlors, and by their lease were to pay as rent, in monthly installments, "a sum equivalent to one-half the gross receipts" of such billiard rooms, "less payments made for the labor, light, heat and advertising necessary to operate the same." ·

Lissner, Krueger and Goldberg immediately assigned their rights to complainant (their corporation).

Subsequent to complainant's thus becoming the landlord of Hildinger and Bishop, the latter rendered monthly statements to complainant, in and by which they deducted expenses other than labor, light, heat and advertising, and claimed the right so to do.

Complainant thereupon filed its bill for discovery and an accounting and for an adjudication of the true interpretation of the contract.

Defendants contend that during the entire term of their lease, prior to the lease from Duggan to complainant, they had, with the acquiescence and consent of Duggan, deducted these additional expenditures, to wit, all the expenditures in the operating of the billiard parlors, including the carrying over into a succeeding month, as an expenditure for that month, of any deficit in one month's receipts under the expenditures for the same month; that this course of conduct constituted an interpretation of the contract by the parties, and perhaps a mutual modification thereof, which will be upheld now as against Duggan's assignees just as against Duggan himself.

Complainant contends that the lease is clear and leaves no room for interpretation; that no oral modification of the lease can be valid or binding, because of the statute of frauds; that if such modification was made, and would otherwise be valid and binding, defendants are estopped from such claim because they did not notify complainant's assignors of such modification.

Let us consider first the questions arising, as between lessor and lessee, under the provisions of the lease.

The lessor agreed to install toilet rooms, elevator and electric wiring; the lessee agreed to install electric light fixtures,

billiard tables and appurtenances, and to operate the leased premises as a billiard parlor.

The rental for the premises "during the term" of the lease, is a sum equal to one-half the gross receipts of the billiard rooms, less the payments made for labor, light, heat and advertising necessary to operate the same; in other words the rental was to be one-half the net receipts of the billiard rooms, such net receipts being ascertained by deducting from the gross receipts the specified items of expense. (In paragraph 5 of the lease these net receipts are spoken of as "profits.")

The proofs show that some of the expenditures such as for coal, and license fees, while made in one month, covered more than one month's operation. The lease does not provide for a monthly rental, but a rental for the term, paid in monthly installments. It seems clear therefore that the accounting between the parties must "carry over" from month to month— not that a monthly rent would be due each month on the basis of that particular month's expenditures and receipts.

To illustrate: If in April, say, the receipts were light and the expenditures heavy, the latter might exceed the former, and there be a loss instead of a profit for that month. In that event not only would there be no installment payable to the lessor for that month, but the lessees would be entitled to add the loss to the expenditures for the month of May in ascertaining the "profit" for May, one-half of which would be payable to the lessor.

In other words the rental is for the whole term as a whole, and the lessor is only entitled, in the long run, to one-half the net receipts from the business during the whole term (unless the receipts should be diminished by failure of lessees to operate the business in a proper manner).

On the other hand, the lessees have no right, under the terms of the lease, to deduct anything but the specified expenditures in arriving at the net receipts of which the lessor is to receive half. The statements of account rendered by the lessees to complainant, show that they have deducted a number of such items, for instance, amounts paid for billiard

balls, for linoleum, for repairs, for cushions, for a radio set, for towels and divers other items which, under the terms of the lease, are not so deductible. Paragraph 3 of the lease expressly provides that lessees shall at their own cost and expense keep the equipment in complete renovation and repair and supplied with all appurtenances. The lessees under a lease are bound to make repairs to the leased premises, unless the lessor agrees so to do; this lease contains no such agreement by the lessor. There are other items of reduction in the statements of account, as to the propriety of which the evidence before the court is insufficient for determination.

Let us next consider whether any reason appears why this matter should not be determined as it would be between the original lessor and the lessees. The lease was not recorded. The evidence shows that there was never any conversation or communication between complainant and the lessees, Hildinger and Bishop, as to the terms or rights under this lease until after complainant had succeeded to the rights of the original lessor, Duggan. (The word "complainants" will be used from this point herein to include complainant's assignors.) So far as appears by the evidence complainants obtained whatever information they had, about the Hildinger and Bishop lease, from Duggan. Hildinger and Bishop were in open possession; complainants had notice therefore that they had rights, and were bound at their peril to inquire of Hildinger and Bishop what their rights were. This they did not do. There is nothing therefore to estop Hildinger and Bishop from asserting such rights as they had.

It remains to be considered what rights Hildinger and Bishop did have. As has already been noted they had the right to carry over losses incurred in one month into the next month's accounting. They also claim that by agreement between them and Duggan, or by his consent and acqiescence and estoppel against him, they acquired the right to make deductions other than those specified in the lease. To this latter claim defendants interpose the objection of the statute of frauds against an oral modification of the lease. This objection would seem to be valid (in the absence of any circum-

stances raising an estoppel against complainants relying thereon—and none such appear); but aside from that, the proofs appear quite insufficient to establish that there was any agreement to modify, or any circumstances of acquiescence or otherwise which would estop Duggan (or the complainants who succeeded to his rights and liabilities) from denying such a modification.

It does appear by the proofs that from the very beginning Hildinger and Bishop rendered statements of account to Duggan which included deductions not authorized by the lease, and gave checks for rent based on such statements, which checks were retained and cashed by Duggan.

This, however, is not enough to preclude Duggan or complainants from insisting now on their legal rights—the mere receiving by Duggan of a less amount than was legally due him. His acceptance of a part only of what was due him, does not, without more, constitute a waiver of his right to the balance or an estoppel against his asserting such right. There must be shown either an agreement with consideration or an intent to waive, or a change in defendants' circumstances, because of his failure to insist on his rights, rendering it inequitable for him (or complainants) now to insist on them. None of these is proven by the evidence.

The only evidence in anywise tending to show an agreement or waiver by Duggan is that of Hildinger. Bishop testifies that he never had any conversation with Duggan about the lease or the statements or the accounts. The bookkeeper, Laird (the only other witness on the point), says only that in the early days of the lease Duggan called several times and discussed the contents of the statements with Hildinger, out of Laird's presence, and then asked Laird to get the bills for some of the items shown on the statements so that he could see what the expenditures were for.

Hildinger testifies that "in a conversation with Bishop and Duggan * * * there was some objection to the items to be deducted," and Mr. Duggan said: "There is only one way to get at this, and that is to count everything in. He was to keep up the repair of the buildings and the heater and

everything like that;" that Duggan "said he didn't think it could be worked out the way the lease called for and the only way to do it was to deduct everything out, and talked it over. Well go ahead and make all the deductions and then try to do the best we could to get along."

He also says that Laird and Duggan talked it over.

Recalled, he said that he made the additional deductions because that was "my understanding of the lease in conversation with Mr. Duggan;" and later asked as to when the modification was made, he said, "I don't recall that modification just offhand."

These are the portions of Hildinger's testimony which are the strongest in favor of defendants. Taken by themselves they are quite unsatisfactory and fail to establish any valid agreement modifying the lease. Taken in connection with the balance of Hildinger's testimony, which is replete with "I think" and "I don't recall," and statements of which the meaning is quite unintelligible to this court, the testimony is still more unsatisfactory. In addition, Bishop (the other defendant himself) and Laird (defendants' witness) say that they never had any such conversations with Duggan. Still further, Krueger (one of the complainants) testified—and it was not denied by Hildinger—that after complainant had taken over this property and the present dispute had arisen, he, at Hildinger's suggestion, arranged a conference with Duggan and Hildinger, at which he (Krueger) asked why Hildinger and Bishop had been allowed to deduct the additional items, and Duggan denied that he had authorized or allowed the deductions to be made, saying that the only way he allowed it was that he didn't get paid. Duggan was not called as a witness, nor any reason given for the failure. The burden was of course on defendants to establish their affirmative defense. The evidence fails to establish modification either by agreement, waiver or estoppel.

Defendants concede the right of complainants to an accounting—the dispute has been as to the items to be dealt with in the accounting. The only items which defendants are entitled to deduct from the gross receipts are those as

specified by the lease, and herein determined, with this exception: It is intimated in the proofs that defendants may have made expenditures which they were not bound to make under the lease and of which lessors received the benefit (such as heating part of the building not leased to defendants). Complainants seeking equity must do equity, and if any such items in fact exist defendants should be allowed credit for them.

It may be referred to a master to take and state the account, unless the parties can agree.