64 N.J. Super. 599 (1960)
166 A.2d 803
THE MARTINIQUE REALTY CORP., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
REGINALD B. HULL AND MARY HULL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1960.
Decided December 29, 1960.
*601 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Richard E. Cherin argued the cause for plaintiff-appellant (Messrs. Lieblich & Cole, attorneys; Mr. Herbert A. Vogel, of counsel).
Mr. Roger Friedbauer argued the cause for defendants-respondents (Messrs. Friedbauer & Friedbauer, attorneys).
*602 The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff, the purchaser of a leasehold interest in a 55-apartment building in Passaic, commenced this suit against the tenants of one of the apartments for damages for the nonpayment of rent allegedly due and owing under the terms of a five-year written lease. Defendants asserted the defense of payment, claiming that the entire rent for the term of the lease had been paid in advance to the former lessor, plaintiff's vendor, and that plaintiff purchased subject to all of defendants' rights as lessees. No basic facts being in issue, the Law Division granted defendants' motion for summary judgment on the ground that plaintiff was chargeable with notice of defendants' rights in and to the apartment, as created between defendants and plaintiff's assignor. Plaintiff files the instant appeal from that determination.
The apartment building in question was formerly owned by The Martinique, a New Jersey corporation. On August 5, 1957 the corporation entered into a five-year lease with defendants for a 1 1/2 room apartment. The gross rental, including security deposit, was $8,450, the rent payable at the rate of $130 per month. Defendants immediately delivered to the landlord a check in the amount of $130, and on August 15, 1957, apparently in accordance with an oral arrangement, the entire rental balance was paid in advance by defendants in the form of a check for $8,320.
On or about October 22, 1957, at the lessor's suggestion, defendants agreed to exchange their apartment for a larger one in the same building. Since the rent on the larger apartment was $150 a month, it was agreed that defendants would make up the difference in annual installments of $240, besides providing additional security of $100. Accordingly, a new lease was executed; its terms ignore the prior advance payment and simply provide that rent will be paid to the landlord over a five-year term, commencing December 1, 1957 and terminating October 31, 1962, in the gross sum of $9,000, payable "in equal monthly installments of *603 $150 in advance on the first day of each and every calendar month during said term." Both the additional security deposit of $100 and the sum of $240, covering the additional rental for the calendar year beginning December 1, 1957, were paid by check to the landlord. A letter dated October 23, 1957 was received by defendants from the lessor's agent, acknowledging the rent prepayment and the $240 annual payment arrangement. Defendants took possession of their new apartment in November 1957.
Subsequently, on December 16, 1957, The Martinique sold and conveyed title to the premises to Cambrian Estates, Inc., a New York corporation, taking back, at the same time, a long-term lease covering the apartment building. On April 29, 1958 the leasehold interest of The Martinique was sold to the present plaintiff, a separate and distinct corporation. At the time of purchase, plaintiff caused an uneventful search to be made at the office of the Passaic County Clerk. (The Hulls did not record their lease until July 16, 1958.) It apparently relied upon its vendor's silence and its reading of paragraph 45(a) of the Martinique-Cambrian leaseback agreement of December 16, 1957, providing that "the lessee shall not without the prior written consent of the Lessor with respect to any lease now in existence or any renewal or extension thereof of any space demised to any tenant, accept prepayment of rent in excess of one month prior to its due date."
In May of 1958 plaintiff mailed rent statements to all of its tenants. Defendants, having learned for the first time that ownership of the leasehold had changed hands, refused to tender any rent by reason of their prepayment.
Plaintiff's contention on this appeal is two-fold. It argues, first, that as the transferee of the leasehold interest, it was entitled to the benefit of all of the covenants between its predecessor and the Hulls. Secondly, it urges that it had a right to rely upon the terms of defendants' lease as written, and that the prepayment of rent is therefore no bar as such prepayment was inconsistent with the terms of the *604 lease; further, that it had no notice, at the time of purchase, of defendants' advance payments, and that it was not, under the principle of Feld v. Kantrowitz, 98 N.J. Eq. 167 (Ch. 1925), affirmed 99 N.J. Eq. 847 (E. & A. 1926), and 99 N.J. Eq. 706 (Ch. 1926), required to make inquiry of each tenant as to the latter's interest in the property outside of the written lease. Defendants respond by questioning the applicability of the Feld case, arguing that plaintiff was under a duty to make inquiry respecting the rights of lessees under their tenancies and that failure to make such inquiry charges plaintiff with notice of such rights. They further contend that the payment of rent by a tenant to his landlord in advance of the time stipulated in the lease for its payment is a discharge pro tanto from the claim of the lessor, and therefore a valid defense against the assignee of the lessor's interest.
Plaintiff is confronted at the outset by the specific statutory provision that the rights of a lessee of real estate for a term of years vis-a-vis his lessor survive the passing of the lessor's interest to another by assignment or otherwise. R.S. 46:8-3; 51 C.J.S. Landlord and Tenant § 44(2), p. 567. This is but an illustration of the general rule that the assignee of a contract right takes subject to all defenses valid against his assignor. N.J.S. 2A:25-1. While it may be contended that the applicability of these sections is limited by the penalties inherent in our recording act, R.S. 46:22-1 et seq., embracing leases for a term exceeding two years, N.J.S.A. 46:16-1(a), the statute requires, however, that the prevailing purchaser be bona fide in nature.
An essential characteristic of the bona fide purchaser is his lack of notice of the interest of the unrecorded or late-recorded party. It is long settled that the purchaser of a lessor's interest in property has a duty to make inquiry as to the extent of the rights of any person in open, notorious and exclusive possession of the premises; if this duty is not discharged, then notice is imputed to the purchaser of all facts which a reasonably prudent inquiry would have revealed. *605 Holmes v. Stout, 10 N.J. Eq. 419, 426 (E. & A. 1855); Wood v. Price, 79 N.J. Eq. 620, 624 (E. & A. 1911); LaCombe v. Headley, 91 N.J. Eq. 63 (E. & A. 1919); Hinners v. Banville, 114 N.J. Eq. 348, 356 (E. & A. 1933); Zurick v. Perlmutter, 94 N.J.L. 328, 330 (Sup. Ct. 1920); McCall v. Yard, 11 N.J. Eq. 58, 62 (Ch. 1853); Serafin v. Wolff, 5 N.J. Super. 386, 390-391 (App. Div. 1949). See American Law of Property, § 17.12, pp. 574-78. 55 Am. Jur., Vendor and Purchaser, § 712, pp. 1087-88, § 720, p. 1093. Such inquiry must be made of the tenant in possession, and if inquiry is made only of the former lessor, the tenant will not be precluded from asserting against the purchaser such rights as he possessed against the lessor. Arcade Realty Holding Corp. v. Hildinger, 6 N.J. Misc. 1055, 1058, 144 A. 25 (Ch. 1928).
Moreover, it has been held, in a situation strikingly parallel to the one at hand, that the duty of inquiry is not discharged when an intending purchaser of a leasehold merely examines the written lease which the occupant has signed with the owner of record. The purchaser assumes at his peril that the instrument accurately defines the rights of the occupant. Caplan v. Palace Realty Co., N.J., 110 A. 584 (Ch. 1920). Vice-Chancellor Leaming stated unequivocally in the latter case that
"If the purchaser is content to rely upon the representations of the landlord, either express or implied, to the effect that the writing contains * * * an accurate statement of the terms actually agreed upon, and fails to inquire of the tenant touching those facts * * * the purchaser's rights as against the tenant can rise no higher than those which were in fact enjoyed by the landlord under that instrument and any right of reformation of the instrument for fraud or mistake which the tenant may have enjoyed against the landlord may in like manner be enjoyed against the purchaser." (110 A., at p. 585.)
Plaintiff contends, however, that the duty of inquiry has been severely restricted, if not eliminated entirely, in cases involving a multi-tenanted office or apartment building. Reliance is placed exclusively on the opinions in Feld v. *606 Kantrowitz, supra. There, an attorney, a tenant in a small office building, claimed that he had acquired, under an unrecorded assignment, an option to purchase a one-sixth interest in the building. The defendant, who had entered into a contract to purchase the entire property without notice of plaintiff's option and without making inquiry of the tenant, claimed status as a bona fide purchaser and asserted that defendant's unrecorded option was extinguished. The vice-chancellor took cognizance of the doctrine of inquiry notice but held that it did not apply to the situation before him. He reasoned that since an office building or apartment house is constructed for the very purpose of creating numerous tenancies, a purchaser should be able to assume that the occupants of the offices or apartments possess the designated status of tenants. Therefore, he concluded, "under these circumstances, to charge a prospective purchaser with notice of any right, title, or interest of one of the tenants, beyond the right of tenancy would be absurd." (98 N.J. Eq., supra, at p. 169). He further discussed the rule that to put the purchaser on inquiry notice, the tenant must be in exclusive possession, and concluded that the interest of one of numerous tenants of a large building does not satisfy the exclusivity requirement. The vice-chancellor's decision was affirmed on the sole ground that he had applied the proper procedural principles in denying plaintiff a preliminary injunction; the Court of Errors and Appeals expressly disclaimed any examination of the merits of the litigation. 99 N.J. Eq. 847, 849 (E. & A. 1926). Subsequently, the cause came on for final hearing, at which time the vice-chancellor reiterated his position, further stating that Caplan v. Palace Realty Co., supra, "does not, so far as my reading of the opinion reveals, refer in any way to the constructive notice arising from tenancy in a building such as the one involved in the case at bar." 99 N.J. Eq., supra, at p. 707.
The precise holding in Feld would seem to be clearly distinguishable from the instant fact situation in that defendants *607 are not herein asserting any interest "beyond the right of tenancy," that is, beyond a demand for recognition of the precise terms of their tenancy. To apply Feld to the instant situation would be to contravene the general rule that possession and occupancy of the premises by the tenant amount to notice of his advance payment of rent, and that such prepayment  honestly made, and in the absence of special circumstances putting the tenant on notice that he is prejudicing the rights of third parties  will protect the tenant against further liability for such rent to the landlord and all successors to his interest. 52 C.J.S. Landlord and Tenant § 535, p. 348; 32 Am. Jur., Landlord and Tenant, § 461, p. 378. Boteler v. Leber, 112 N.J. Eq. 441 (Ch. 1933), cited by plaintiff, is not opposed to this view. The court in Boteler left open the question of whether notice would affect the rights of the parties. Furthermore, the lease was expressly subordinated to the mortgage, thereby insulating the mortgagee's rights to the rents upon default.
On the other hand, we cannot in all candor overlook indications in the language of Feld broad enough to encompass the instant case, namely: (1) the vice-chancellor's statement (98 N.J. Eq., supra, at p. 172), that he might decide differently if "dealing with the right of a tenant as such, even in this kind of a building, that appears in his lease." (Emphasis added) Evidence of the prepayment of the Hulls did not, as we have noted, appear in their lease; and (2) the attempt to distinguish the Caplan case on the ground that a multi-tenanted building was not there involved, leaving the implication that the purchaser of such a building can justifiably rely exclusively on the tenants' leases as written.
We must therefore consider, to the extent it bears on the present appeal, the question which we left open in Schnakenberg v. Gibraltar Savings and Loan Ass'n, 37 N.J. Super. 150, 158 (App. Div. 1955): "Whether the rights of a tenant in possession and the duties of a purchaser of realty vary with the size and character of the building * * *."
*608 At least with respect to the details of a tenant's leasehold arrangement with his landlord, we are convinced that the purchaser's duty of inquiry does not vary with the number of tenants occupying the property. The arguments advanced in favor of such a correspondence are of dubious validity. Inquiry notice is an equitable doctrine designed to effect a distribution of precautionary burdens in a situation involving two "innocent" parties. American Law of Property, § 17.11, pp. 565-66. We see little merit in plaintiff's insistence that it would be exceedingly onerous to require inquiry of every tenant in a multi-tenanted building. The statement in Feld, 98 N.J. Eq., supra, at p. 169, that it "would be absurd" to hold that "one contemplating the purchase of one of the great office buildings in the metropolitan district would be under a duty to personally interview every one of the hundreds of tenants occupying the offices thereof" ignores the very practical and effective device of the written communication. The duty to inquire is discharged by the exercise of due diligence or reasonable prudence, see Clawans v. Ordway B. & L. Ass'n, 112 N.J. Eq. 280, 284 (E. & A. 1933), and what such an inquiry fails to reveal is not further protected by the mere continued possession of the tenant. 4 American Law of Property, § 17.12, p. 576. Under certain circumstances, written inquiry may be sufficient to discharge that duty.
We need not dwell upon the statement in Feld that no single occupant of a multi-tenanted building is in such exclusive possession as to warrant the invoking of the purchaser's duty of inquiry. For the period of his lease, the lessee is considered the exclusive owner and occupier of the demised premises. Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593, 600 (App. Div. 1955). That the demised premises consist of one apartment rather than an entire building should not be of consequence. This is not a situation involving the interests of the various family occupants of a single house. See Rankin v. Coar, 46 N.J. Eq. 566 (E. & A. 1890); Annotation, 2 A.L.R.2d 857 (1948). *609 Each apartment in the building under consideration is an entirely separate habitational unit, evidenced by a separate landlord-tenant arrangement.
We expressly refrain from a determination as to whether a purchaser's duty of inquiry extends to collateral interests of the lessee which are independent of his tenancy. We note, however, that the majority rule appears to extend the inquiry notice doctrine to cover certain collateral interests of the lessee, such as an option to purchase, see Annotations, 17 A.L.R.2d 331 (1951), 37 A.L.R.2d 1112 (1954), though perhaps not a claim of ownership of the fee. See Annotation, 74 A.L.R. 355, 357 (1931).
In any event, plaintiff, having failed to fulfill its duty of inquiry with respect to defendants' rights under their tenancy, is subject to the prior effective discharge by the latter of their rental obligations. Caplan v. Palace Realty Co., supra.
Judgment affirmed.